John L. LEWIS, Henry G. Schmidt and Josephine Roche, as Trustees of the United Mine Workers of America Welfare and Retirement Fund, Plaintiffs,

v.

Edward MEARS, individually and trading as Mears Coal Company, Defendant.

Civ. A. No. 15288.

United States District Court
W. D. Pennsylvania.

Nov. 23, 1960.

As Amended Dec. 6, 1960.

Alexander Unkovic, Kountz, Fry & Meyer, Pittsburgh, Pa., for plaintiffs.

J. Lee Miller, Miller & Miller, Pittsburgh, Pa., for defendant.

MARSH, District Judge.

Plaintiffs, trustees of the United Mine Workers of America Welfare and Retirement Fund, brought this action to recover money due to the United Mine Workers of America Welfare and Retirement Fund (hereinafter Fund) by the defendant pursuant to a contract allegedly entered into by the defendant and the United Mine Workers of America. This contract, which was the "National Bituminous Coal Wage Agreement of 1950 as Amended September 29, 1952" pro-

vided, inter alia, that the operators signatory thereto should pay into the Fund the sum of forty cents (40¢) per ton of two thousand (2,000) pounds on each ton of coal produced for use or for sale.[1] Without going into detail, it can be stated briefly that plaintiffs contend that defendant entered into the above-mentioned contract on or about October 31, 1952, and that between October 1, 1952, the alleged effective date of the contract, and December 31, 1955, defendant produced a certain amount of coal for use or for sale for which defendant did not make the contractually required payments to the Fund. The defendant contends, on the other hand, that the contract referred to never was consummated because a condition precedent to its consummation never occurred. Additionally, defendant maintained that even if it be found that the contract was entered into, the defendant, nevertheless, terminated it on or about April 5, 1953.

By stipulation filed prior to trial, the defendant admitted that he had signed the contract in question, but at the trial, over objection by plaintiffs, defendant was permitted to testify that one Arthur Anderson, an officer of the United Mine Workers of America—who with other officers thereof later signed the contract on its behalf—negotiated the contract with defendant, procured defendant's signature thereto, and had agreed that the contract would not become effective until the defendant received a copy signed by the United Mine Workers of America. Defendant testified that he had never received such a copy of the contract and plaintiffs introduced no evidence to the contrary. At the close of defendant's case, plaintiffs moved for a directed verdict on the ground that plaintiffs had proved their cause of action and defendant had failed to prove any defense thereto. This motion was denied. At the close of all the evidence, plaintiffs made a similar motion and decision thereon was reserved (Rule 50(b), Fed.R.Civ.P., 28 U.S.C.A.).

[1]. See plaintiffs' Exhibits 1 and 3.

The case was submitted to the jury on two interrogatories pursuant to Rule 49(a), Fed.R.Civ.P., 28 U.S.C.A. These interrogatories were submitted to counsel prior to their closing address to the jury,[2] and neither counsel made any objection thereto nor did either counsel demand that any other issue of fact be submitted to the jury.

The questions submitted to the jury were:

"1. Did Arthur Anderson agree with the defendant Mears that the written instruments, Exhibits 1, 2 and 3, at the time they were signed by Mears, would not become valid and enforceable contracts until Mears received copies thereof executed by the officers of the United Mine Workers of America?"

to which the jury answered "Yes", and

"2. Did the defendant Mears on April 5, 1953 enclose a note with the check letter of advice which he sent to plaintiffs stating in said note that he cancelled the contract with the Union?"

to which the jury answered "No".

The verdict was rendered on May 4, 1960.

Argument was had on plaintiffs' second motion for a directed verdict on June 21, 1960,[3] and on the following day an order was filed denying the motion and entering judgment in favor of the defendant in accordance with the jury's answers to the interrogatories.

On June 30, 1960, plaintiffs filed the motions here under consideration, viz., a "Motion to Reopen Judgment and For a Directed Verdict in Favor of the Plaintiffs" and a "Motion for New Trial".

*Motion for New Trial.*[4]

Plaintiffs cite fourteen points in support of this motion; in their briefs and at oral argument, however, they stress only three which may properly be considered under a motion for new trial. These points may be summarized as follows:

1. The court erred in permitting evidence that the proposed agreement was not to become a contract until defendant received a copy of it signed by the United Mine Workers of America. Plaintiffs contended that this evidence was in violation of the parol evidence rule.

2. The court erred in not finding as a matter of law that the defendant was estopped to disavow the agreement.

3. The court erred in not finding as a matter of law that the defendant ratified the agreement.

The parol evidence rule has no application to the facts of this case. Here, the defendant admitted that he signed the contract document, *but contended that it never ripened into a contract* because Anderson, who procured defendant's signature, had agreed that the instrument would not be a contract until defendant had received a copy, signed and completely executed. This, defendant contended, was a condition precedent to the formation of the contract, and since the condition never occurred, there was no contract.

The parol evidence rule provides generally that whenever any *contract* is contained in writing which appears to be complete and regular on its face, it is the sole evidence of the agreement, and cannot be *varied, altered,* or *contradicted* by parol (except in certain circumstances not present in this case). See: Bardwell v. Willis Co., 1953, 375 Pa. 503, 100 A.2d 102 and cases cited on page 104 of 100 A.2d.

It is, of course, fundamental that with respect to the application of the rule to contracts, there must first be a contract. In Smilow v. Dickerson, 1947, 357

2. Testimony, p. 179.

3. This procedure was in accord with plaintiffs' preference and contrary to defendant's preference (T., pp. 238–240).

4. The motion for a new trial was served within 10 days after the entry of judgment in accordance with Rule 59(b), 28 U.S.C.A.

Pa. 455, 54 A.2d 883, the Court at page 886 of 54 A.2d quotes from Burke v. Dulaney, 153 U.S. 228, 14 S.Ct. 816, 38 L.Ed. 698, as follows:

> "'The rule that excludes parol evidence in contradiction of a written agreement presupposes the existence in fact of such agreement at the time suit is brought. But the rule has no application if the writing was not delivered as a present contract * * *.'"

Further, the Court states:

> "In the leading English case of Pym v. Campbell * * * it is said: 'The distinction in point of law is that evidence to vary the terms of an agreement in writing is not admissible, but evidence to shew that there is not an agreement at all is admissible.'"

Wigmore on Evidence, 3d Ed., Vol. IX, § 2410, pp. 30–33, states with reference to the parol evidence rule:

> "The case of Pym v. Campbell, in England, is commonly taken as the leading one.
>
> "In the United States, the doctrine is not only completely accepted, but has even been applied to sealed instruments other than deeds of land in jurisdictions still bound by precedent to the older rule for deeds * * *."

In Williston on Contracts, Revised Ed., Vol. 3, § 634, at pp. 1823–1825, it is stated:

> "Accordingly, it may be shown by parol evidence not only that a writing was never executed or delivered as a contract * * * but also * * * that the parties agreed by parol that the writing in question should not become effective until some future day or the happening of some contingency, if this is not inconsistent with the express terms of the writing."

The Restatement of the Law of Contracts, Chapter 9, § 241 states:

> "Where parties to a writing which purports to be an integration of a contract between them orally agree, before or contemporaneously with the making of the writing, that it shall not become binding until a future day or until the happening of a future event, the oral agreement is operative if there is nothing in the writing inconsistent therewith."

Plaintiffs cite Lewis v. Benedict Coal Corp., 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed. 2d 442, for the proposition that § 301(b) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185(b) gives the federal courts the power to fashion a body of federal law in the light of the national labor policy for the enforcement of collective bargaining agreements; plaintiffs then cite the following cases as authority for the rule that parties to a collective bargaining agreement are precluded from relying on prior or contemporaneous oral agreements: Lewis v. Toth, Civil Action 14875 (W.D.Pa. 1959), affirmed 3 Cir., 1960, 280 F.2d 422; Lewis v. Mearns, D.C.N.D.W.Va. 1958, 168 F.Supp. 134, affirmed 4 Cir., 1959, 268 F.2d 427; Gatliff Coal Co. v. Cox, 6 Cir., 1945, 152 F.2d 52; Lewis v. Young and Perkins Coal Company, Inc., D.C.W.D.Ky.1960, 190 F.Supp. 838. It is clear, however, that in each of the cases cited, the Court was applying the parol evidence rule to collective bargaining contracts in its generally accepted manner; namely, to preclude an attempt to *alter*, *vary* or *contradict* the terms of a *contract*. It appears, therefore, that the federal courts in fashioning "a body of federal law in the light of the national labor policy" have simply adopted and applied the common law parol evidence rule, and that rule, as previously demonstrated has no application to the facts in this case. There was no attempt to alter, vary, or contradict any term of the alleged contract in the instant suit; the defendant was simply permitted to show that no contract existed, which as we have seen, was not in violation of the parol evidence rule.

It follows, then, that the court was not in error in permitting the defendant to prove the agreed condition precedent to the formation of the contract in suit.

Prior to the court's charge to the jury, plaintiffs submitted, inter alia, the following points for charge:

"13. The defendant's actions in making payments to the Welfare Fund, checking off union dues, accepting benefits for himself and his employees, ratified the agreement of 1950, as amended, and he is bound by the terms thereof.

"14. Defendant, in signing the agreements, failing to disavow them and in committing acts consistent therewith, estopped himself from maintaining that the contracts never legally existed."

We denied both of the points, and in their motion for a new trial plaintiffs cite as error the court's refusal to find as a matter of law that defendant was estopped to disavow the written collective bargaining agreement and that defendant ratified said agreement. .

There was no error in refusing points 13 and 14. As previously stated, the case was submitted to the jury on special interrogatories pursuant to Rule 49(a), Fed.R.Civ.P., 28 U.S.C.A. Plaintiffs' points 13 and 14 were not demands under Rule 49(a) for the submission of those questions to the jury; on the contrary, they were requests that the court resolve them as a matter of law in favor of the plaintiffs, and neither the law nor the evidence warranted such a ruling by the court.

The plaintiffs, of course, had the burden of proof on both of the points cited, and had we granted the points, or either of them, we would have, in effect, directed a verdict in favor of the plaintiffs on the liability question—the only real issue in the case. As stated in Polhemus v. Water Island, 3 Cir., 1958, 252 F.2d 924, 928:

"It is not a usual thing for the trial judge to direct a verdict in favor of the party having the burden of proof, though this has sometimes been done, *under extreme circumstances.*" (Emphasis supplied.)

In Moore's Federal Practice, Vol. 5, ¶ 50.02[1], p. 2314, it is stated:

"[A]lthough the statements concerning directed verdicts are often extremely ambiguous, a verdict will normally be directed where both the facts and the inferences to be drawn therefrom, as supported *by the overwhelming weight of the evidence, point so strongly in favor of one party or the other that the court feels reasonable men could not possibly come to a contrary conclusion.*" (Emphasis supplied.)

See also, cases cited in footnote 8, page 2314, and in annotations.

The evidence pertinent to the questions of estoppel and ratification fell far short of pointing "so strongly in favor of one party [i. e., plaintiffs] * * * that the court * * * [felt] reasonable men could not possibly come to a contrary conclusion" on those questions.

There was evidence that defendant accepted Fund hospitalization benefits from which the plaintiffs contend defendant thereby either ratified the alleged contract or was estopped to deny its existence, but there was also evidence that defendant was a member of the Union and the holder of a valid hospital benefits' card for two years prior to the date on which he signed the alleged contract (T., pp. 98, 99).

In 19 Am.Jur., Estoppel, § 65, it is stated at pp. 691–692:

"[E]stoppel does not ordinarily arise from the acceptance of benefits * * * where the acceptance is not inconsistent with the position subsequently taken. One cannot be estopped by reason of accepting that which he is legally entitled to receive in any event. Hence, estoppel against attacking or disputing a contract or transaction is not ordinarily created by the acceptance of a benefit purporting to be derived therefrom if in fact the party is entitled

thereto regardless of whether the contract or transaction is sustained or overthrown."

See also, 31 C.J.S. Estoppel § 109, page 350.

There was evidence that the defendant paid royalties in accordance with the contract—and plaintiffs offer this as proof that defendant either ratified the contract or should be estopped to deny it—but there was also evidence that defendant paid some of these royalties prior to the execution of the contract here in suit (T., p. 56) and that the reason defendant paid royalties, regardless of contractual liability, was because his customers would not purchase defendant's coal unless the royalties were paid (T., p. 70). The so-called "check letters of advice" sent to the Fund have no more effect than the royalty payments since the former were simply forms which accompanied the payments.

The defendant checked off union dues consistent with the agreement, and plaintiffs cite this, too, as evidence of ratification and estoppel, but defendant testified that he checked off union dues for either or both of the two men who worked for him because they asked him to do so, not because he was aware of a contractual obligation to do so (T., p. 103). Furthermore, there is absolutely no evidence that the plaintiffs, third party beneficiaries, were aware that defendant checked off union dues, so that any possible "representation" which otherwise might be inferred from this act of defendant is inoperative as a basis for an estoppel. "It follows that no estoppel can arise in favor of one who was ignorant of the fact that any representation had been made, since it is obvious that one cannot rely upon what he does not know or be misled by something of which he is not informed." 19 Am.Jur., Estoppel, § 83, pp. 730–732.

Plaintiffs also contend that since defendant failed to disavow the contract and notify the plaintiff trustees of the prior or contemporaneous agreement with Arthur Anderson and advise plaintiffs that he (defendant) did not consider himself bound by the agreement, the court should have found as a matter of law that defendant thereby ratified, or was thereby estopped to deny the existence of, the contract.

We see no merit to this contention, for even *if there had been a contract* and defendant had been making royalty payments thereunder to the Fund, there would have been no obligation on defendant to advise the Fund, the third party beneficiary, of his intention to terminate the contract and discontinue the payments. The contract itself provides that notice of termination must be given to the *other* party, which in this case would be the United Mine Workers of America, not the Fund. If the defendant was under no obligation to notify the Fund of the *termination* of the contract, a fortiori, he was under no duty to notify the Fund that no contract existed, and if there was no duty to give notice to the Fund, the plaintiff trustees thereof cannot rely on this contention to establish estoppel. See 19 Am.Jur., Estoppel, §: 55, pp. 663–664.

All of the above, we think, creates sufficient doubt on the questions of estoppel and ratification to preclude binding instructions or any ruling in favor of the plaintiffs as a matter of law. These questions could have been submitted to the jury if either party had so requested, but since neither party demanded that those issues be submitted to the jury, when the court entered judgment on the special verdict the court is deemed to have made findings "in accord with the judgment on the special verdict". Rule 49(a).

There is an additional matter that bears comment. In their 11th reason for a new trial the plaintiffs contend that "the Court erred in not finding as a matter of law that the witness, Anderson, was not an agent for the plaintiffs." The plaintiffs themselves called Anderson as a witness and proved by him that he was an officer of the United Mine Workers of America, District 2 (the district

of defendant's mine), and an organizer (T., pp. 25–26). Anderson testified that he negotiated the agreement with the defendant and had in his possession and presented to the defendant for his signature blank copies of the contract document, and, in fact, signed it as an officer, along with John L. Lewis, President of the United Mine Workers of America, and other officers on behalf of the Union (T., pp. 24, 25, 26 and plaintiffs' Exhibit 3). There was no suggestion by either party that Anderson was an agent of or acting on behalf of the plaintiff trustees, the third-party beneficiaries.

■ In their 12th and 13th reasons for a new trial plaintiffs contend that the court erred as a matter of law in not finding that Anderson "had no authority to alter, vary or change the terms of the written collective bargaining agreement entered into between the United Mine Workers of America and the defendant", or "to delay the effective date of the" said agreement.

There is no merit in these reasons.[5] First, plaintiffs made no request at the trial that the court decide in favor of plaintiffs as a matter of law that Anderson had no authority from the United Mine Workers of America to negotiate the alleged contract with the defendant; we think they are precluded from doing so now. Second, if Anderson's authority to act for the United Mine Workers of America was an issue of fact for the jury, neither party demanded that it be so submitted, and, therefore, when judgment was entered for defendant on the special verdict, the questions of Anderson's agency and authority were deemed resolved in favor of the judgment. Rule 49(a).

There is ample basis for this "finding". The fact that Anderson, as an officer of the Union, and Mr. Lewis, the President of the Union, signed the document which Anderson negotiated with the defendant is strong evidence that when Anderson acted, he did so with the approval of the United Mine Workers of America and as an agent thereof. And even if it be true that Anderson had no actual authority to make, or agree to, the condition precedent to the consummation of the contract, which condition the jury found he in fact made, we think it is evident that he had apparent authority to do so.

*Motion to Reopen Judgment and for a Directed Verdict in Favor of the Plaintiffs.*

■ Plaintiffs' "Motion to Reopen Judgment and for a Directed Verdict in Favor of the Plaintiffs" must also be denied. We treat this motion as one for judgment in accordance with the motion for a directed verdict under Rule 50(b), 28 U.S.C.A.

As stated previously, we reserved ruling on plaintiffs' motion for a directed verdict made at the close of all the evidence. The case was then submitted to the jury which rendered its verdict on May 4, 1960. The instant motion was not filed until June 30, 1960, almost two months after the jury's verdict was received. Rule 50(b) provides in part:

> "Within 10 days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict * * *."

There was no motion made by plaintiffs for an enlargement of time for the filing of the motion, but even if plaintiffs had so moved, we would have been powerless to grant the motion. Rule 6(b), Fed.R. Civ.P., provides in part:

> "(b) Enlargement. When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the

---

**5.** The parol evidence rule has no application to the facts in this case as heretofore shown.

court for cause shown may at any time in its discretion * * * (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; *but it may not extend the time for taking any action under rules * * * 50(b) * * *."*

The motion was untimely filed and we have no power to grant the relief requested therein. Johnson v. New York, N. H. & H. R. Co., 1952, 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77.

■ But even if we had the power to consider this motion on its merits, the plaintiffs would not be entitled to relief. At the trial plaintiffs made two motions for directed verdict—one at the close of defendant's case and the other at the close of all the evidence—the *sole* ground for each of the motions was: "Plaintiffs have proved their cause of action and defendants have failed to prove any defense thereto." In their motion for judgment in accordance with their motion for directed verdict, however, plaintiffs cite *four* grounds for relief, which grounds may be stated as follows:

(1) The plaintiffs have proved their cause of action and the defendant has failed to prove any defense thereto.

(2) A prior oral agreement to a written collective bargaining agreement is invalid.

(3) The defendant ratified the agreement.

(4) The defendant is estopped to deny the agreement.

The latter three grounds were not specified in the motions for a directed verdict, and the latter two grounds were not even mentioned in counsel's oral argument in support of the motions made at the trial. Rule 50(a), Fed.R.Civ.P., requires that "a motion for directed verdict * * * state the specific grounds therefor." As previously stated the only ground actually specified was (1) above; ground (2) was discussed in counsel's

oral argument in support of the motion, but the latter two grounds were never offered as a basis for a directed verdict and consequently cannot be considered as grounds for a judgmnt "in accordance" with the motion for directed verdict.

The first two grounds must also fail for it is clear from our discussion of the motion for a new trial that defendant did indeed prove a defense to plaintiffs' case; namely, the nonoccurrence of a valid condition precedent to the contract.

An appropriate order will be entered denying plaintiffs' motion for a new trial and "Motion to Reopen Judgment and for a Directed Verdict in Favor of the Plaintiffs".