John L. LEWIS, Henry G. Schmidt and Josephine Roche, as Trustees of the United Mine Workers of America Welfare and Retirement Fund, Appellants,

v.

Edward MEARS, Individually and Trading as Mears Coal Company.

No. 13502.

United States Court of Appeals Third Circuit.

Argued June 19, 1961.

Decided Oct. 11, 1961.

Rehearing Denied Jan. 4, 1962.

Charles L. Widman, Washington, D. C. (Val J. Mitch, Harold H. Bacon, Washington, D. C., Alexander Unkovic, William G. Boyle, Kountz, Fry & Meyer, Pittsburgh, Pa., M. E. Boiarsky, Charleston, W. Va., on the brief), for appellants.

J. Lee Miller, Pittsburgh, Pa. (Harvey A. Miller, Jr., Miller & Miller, Pittsburgh, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

The plaintiffs, having suffered judgment against them below on a jury's verdict and their motions for a directed verdict and/or a new trial having been denied,[1] have brought this appeal raising these issues:

(1) Did the trial judge err in permitting parol evidence to the effect that a Wage Agreement allegedly entered into between the defendant and the United Mine Workers of America ("Union") which required the defendant to make certain payments to the plaintiffs' Welfare and Retirement Fund was never consummated because a condition precedent to its consummation never occurred; and

(2) Did the trial judge err in his refusal to hold as a matter of law that (a) the defendant had ratified the contract, and (b) the defendant was estopped from maintaining that the contract was never consummated?

The plaintiffs, citizens of states other than Pennsylvania, are Trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950 ("Fund"). The defendant is Edward Mears, individually and trading as Mears Coal Company, a resident of Marion Center, Indiana County, Pennsylvania. Jurisdiction exists by reason of diversity.

The Fund was created by the National Bituminous Coal Wage Agreement of 1950. The latter, as amended effective October 1, 1952, provided that each coal operator entering into it covenanted to pay into the Fund forty cents for each ton of coal produced for use or sale. This Agreement will hereinafter be referred to as the "1952 Agreement."

1. The Opinion of the District Court is reported at D.C.W.D.Pa.1960, 189 F.Supp. 503.

In December 1956 the plaintiffs brought suit against the defendant in the District Court of the Western District of Pennsylvania alleging that he had entered into the 1952 Agreement on October 31, 1952 and as a consequence was obligated to pay into the Fund forty cents on each ton of coal produced between October 1, 1952 and December 31, 1955 and that he had not discharged that obligation.

At the trial the defendant was permitted to testify, over the plaintiffs' objection, that when in October 1952 he signed the 1952 Agreement, as well as the 1950 and 1951 Agreements, he did so on the representation of Union's bargaining representative, Arthur Anderson, that the 1952 Agreement "wouldn't be a contract" until defendant "got the contract back signed and fully executed" by the Union. The defendant further testified that he had never received a copy of the 1952 Agreement signed by the Union and on this score it must be noted that the plaintiffs made no denial of that circumstance. The testimony established that the 1952 Agreement was signed by the Union subsequent to the time that the defendant signed it.

Anderson denied that he had agreed with the defendant that the 1952 Agreement would not become effective until it was signed by Union and a copy returned to defendant. He also testified that the defendant had signed the 1950 and 1951 Agreements on May 15, 1952, and not in October 1952 as defendant claimed.

The trial judge, pursuant to Rule 49 (a), Fed.R.Civ.P., 28 U.S.C.A., submitted to the jury in the first of two Interrogatories the specific issue as to whether Anderson had agreed with the defendant that the 1952 Agreement "would not become valid and enforceable" until the defendant had received a copy of it executed by the officers of the Union.[2] The jury answered "Yes" to this Interrogatory.

The second Interrogatory presented to the jury the issue as to whether the defendant had in writing advised the plaintiffs in April 1953 that he had cancelled the contract with the Union. The jury's answer to this Interrogatory was "No."

The issues submitted to the jury were limited to those presented in the two Interrogatories and the record discloses, as the trial judge noted in his Opinion, 189 F.Supp. 505, neither counsel requested "that any other issue of fact be submitted to the jury."

It must be noted, however, that the trial judge in his charge to the jury directed attention, as bearing upon the issue whether a binding contract had been entered into, to testimony adduced by the plaintiffs that the defendant had signed the 1950 and 1951 Agreements on May 15, 1952 and not in October 1952 when defendant said he had signed these Agreements along with the 1952 Agreement; that one Blizzard, an employee of the Fund, had on May 20, 1952 sent forms to the defendant relating to the tonnage payments and that the defendant had completed these forms and made payment in accordance therewith during the intervening months up to April 5, 1953;[3]

---

2. The first Interrogatory read as follows:
"Did Arthur Anderson agree with the defendant Mears that the written instruments, Exhibits 1, 2 and 3, at the time they were signed by Mears, would not become valid and enforceable contracts until Mears received copies thereof executed by the officers of the United Mine Workers of America?"

The record makes clear that Exhibit 1 was the 1950 Agreement, Exhibit 2 was the 1951 Agreement and Exhibit 3 was the 1952 Agreement. It affords, however, no explanation as to why the 1950 and 1951 Agreements were included in the Interrogatory since the action here was premised on the 1952 Agreement. The District Court's Opinion throws no light on the inclusion of the two earlier Agreements. It stated, however, 189 F.Supp. 505, that the "interrogatories were submitted to counsel prior to their closing address to the jury, and neither counsel made any objection thereto * * *."

3. It was stipulated by the parties prior to the trial that the defendant had paid royalties on tonnage produced between September 1, 1952 and February 28, 1953, during October 1952 to March 1953, inclusive.

and that the ledger records of the Fund evidenced royalty payments by the defendant as early as July 9, 1952.

Anent the foregoing the trial judge in his charge also called attention to the defendant's testimony that "although he had been paying royalties for a period prior to October, 1952, he did so not because he signed Exhibits 1 and 2 [the 1950 and 1951 Agreements] on May 15, 1952, but because he could not sell his coal unless he paid the royalties."

With respect to all this testimony the trial judge in substance instructed the jury that it must be weighed and evaluated in connection with the issue as to whether the defendant and Anderson had agreed that the 1952 Agreement (as well as the 1950 and 1951 Agreements), was not to become valid and binding until executed by the Union and a copy delivered to the defendant. At the same time the trial judge charged the jury that it was to consider all the other evidence adduced in arriving at an answer to the two Interrogatories.

Upon return of the jury's answers to the Interrogatories the trial judge advised the parties that he would postpone entry of judgment thereon in favor of the defendants until after oral argument on plaintiffs' motion for a directed verdict made prior to the close of the trial. Later, the trial judge denied plaintiffs' motion and subsequently denied their further motions "to reopen judgment and for a directed verdict" and for a "new trial." This appeal from the denial of these motions followed.

We will first direct our attention to the issue as to whether the trial judge erred in permitting parol evidence designed to establish that the 1952 Agreement was not to become a contract until the defendant had received a copy of it signed by Union.

Plaintiffs urge that the admission of this parol evidence violated both the parol evidence rule and the national labor policy. We do not subscribe to the plaintiffs' view. It is clear that the parol evidence rule has no application to the facts of this case. The challenged testimony was introduced to prove that the alleged contract never existed.

■■ It is well-settled that parol evidence is admissible to prove that a contract did not exist. In Smilow v. Dickerson, 1947, 357 Pa. 455, at page 462, 54 A.2d 883, at page 886, the Pennsylvania Supreme Court in so holding stated:

"In the leading English case of Pym v. Campbell, 6 El. & Bl. 370, it is said: 'The distinction in point of law is that evidence to vary the terms of an agreement in writing is not admissible, but evidence to shew that there is not an agreement at all is admissible.' (Citing cases.)

"It was said by Justice Harlan in Burke v. Dulaney, 153 U.S. 228, 14 S.Ct. 816, 38 L.Ed. 698 [1894]: 'The rule that excludes parol evidence in contradiction of a written agreement presupposes the existence in fact of such agreement at the time suit is brought. But the rule has no application if the writing was not delivered as a present contract * * *,' and parol evidence was admissible to show that there never was any concluded, binding contract entitling the party who claimed the benefit of it to enforce its stipulations."

As to the plaintiffs' contention that apart from the parol evidence rule national labor policy precluded the admission of the defendant's testimony concerning his oral agreement with Anderson it need only be said that while it is true that the Supreme Court has held that the federal courts may "fashion a body of federal law for the enforcement of collective bargaining agreements," Lewis v. Benedict Coal Corp., 1960, 361 U.S. 459, 470, 80 S.Ct. 489, 496, 4 L.Ed.2d 442 and that national labor policy may require modification of the traditional rules of contract law in the case of these agreements, none of the cases cited by plaintiffs preclude the use of parol evidence to establish that an effective acceptance was not communicated by the offeree to the offeror.

■ In our opinion national labor policy does not require the exclusion of parol evidence which shows the lack of an effective acceptance of an offer.

There remains for disposition the points raised by the plaintiffs that the trial judge erred in his refusal to hold as a matter of law that (1) the defendant had ratified the contract and (2) the defendant was estopped from maintaining that the contract was never consummated.

■ On the score of the foregoing it need only be said that the trial judge made factual findings, in accordance with the jury's answers to the Interrogatories,[4] that the elements necessary to support conclusions of law that ratification and estoppel existed were not established by the evidence. We cannot say that these factual findings were clearly erroneous. It would serve no useful purpose to dwell further on these points in view of their extensive discussion by the trial judge in his opinion.

For the reasons stated the judgment of the District Court in favor of the defendant will be affirmed.

### Sur Petition for Rehearing

Before BIGGS, Chief Judge, and GOODRICH, McLAUGHLIN, KALODNER, STALEY, HASTIE, GANEY and SMITH, Circuit Judges.

### PER CURIAM.

There is not a majority of the Court in favor of granting the petition for rehearing. Accordingly the petition will be denied.

BIGGS, Chief Judge (dissenting).

Putting to one side any contention that Mears ratified the 1952 National Bituminous Coal Wage Agreement, that he is estopped to deny that he was bound by it, or that the parole evidence rule was violated, the court below and this court erred in holding that the terms of that Agreement might be nullified by an alleged oral prior or contemporaneous understanding that the terms of the Agreement should not be valid until it was delivered back to Mears. The royalty payments provided for by the Agreement were "really another form of compensation to the employees". Lewis v. Benedict Coal Corp., 1960, 361 U.S. 459, 469, 80 S.Ct. 489, 4 L.Ed.2d 442. As Chief Judge Sobeloff points out in his dissenting opinion in Lewis et al. v. Lowry, 4 Cir., 1961, 295 F.2d 197, the position taken by the majority emasculates the policy intended to be created by Congress in enacting Section 302(c) (5) (B) and vitiates the spirit of Section 8(d) of the Labor Management Relations Act, 29 U.S.C.A. § 186(c) (5) (B) (Supp. 1960) and § 158(d). The federal courts in fashioning a body of federal common law for the enforcement of collective bargaining agreements, Lewis v. Benedict Coal Corp., supra, 361 U.S. at page 470, 80 S.Ct. at page 496, must shape that law so that such agreements cannot be modified or nullified by covert conditions or stipulations entered into between the employer and the union. If it be otherwise industrial strife is sure to ensue and the stabilizing effect on labor relations of the Labor Management Relations Act will be destroyed.

For this reason I dissent from the order of this court denying rehearing en banc.

I am authorized to state that Judge STALEY, Judge GANEY and Judge SMITH join in the views expressed in this opinion.

4. Rule 49(a), Fed.R.Civ.P., 28 U.S.C.A.