See also 295 F.2d 197.

John L. LEWIS, Henry G. Schmidt and Josephine Roche, as Trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950, Appellants,

v.

F. Arnold LOWRY, individually, and trading as Lowry Coal Company, Appellee.

No. 8765.

United States Court of Appeals Fourth Circuit.

Reargued June 10, 1963.

Decided Sept. 17, 1963.

---

454

Harold H. Bacon, Washington, D. C.
(Val J. Mitch, T. G. Dudley, Washington,
D. C., Clyde Y. Cridlin, Jonesville, Va.,
and M. E. Boiarsky, Charleston, W. Va.,
on brief), for appellants.

Robert T. Winston, Jr., Norton, Va.,
and James S. Greene, Jr., Harlan, Ky.,
for appellee.

Before SOBELOFF, Chief Judge, and
HAYNSWORTH, BOREMAN, BRYAN
and BELL, Circuit Judges, sitting en
banc.

ALBERT V. BRYAN, Circuit Judge.

The trustees of the United Mine
Workers of America Welfare and Retire-
ment Fund of 1950 sued F. Arnold Lowry,
a coal operator, to recover payments due
the Fund as so-called royalties under the
provisions of the National Bituminous
Coal Wage Agreement of 1950, as amend-
ed in 1952, 1955 and 1956. From an ad-
verse verdict, on which the District Court
entered judgment, the Fund appeals and,
we think, must prevail.

The Agreement was a collective bar-
gaining contract entered into by the
United Mine Workers of America, as
the representative of the employees, with
such coal operators as became signatories.
The Fund was created by the Agreement
pursuant to the provisions of the Labor
Management Relations Act, 1947, § 302
(c), 29 U.S.C. § 186(c), for the benefit of
the employees of the operators, their
families and dependents. It required the
payment of minimum wages and con-
tribution to the Fund by each operator of
royalties at the rate of 40¢ for every ton
of coal mined.

Admittedly, Lowry signed the Agree-
ment, an expressly and apparently com-
plete and integrated contract, and the
amount the Fund claimed was correct if
the Agreement bound him. His defense
was that it was a sham, and that his sig-
nature was obtained on the representa-
tion by the field worker of the union,
United Mine Workers of America, that
the stipulations of the Agreement in re-
spect to wages and royalties were not
conclusive upon him.

Our opinion is that the evidence did
not justify submission of that defense
to the jury, that Lowry's contention con-
stituted but an impermissible variance
and contradiction of the Agreement, and
that a peremptory direction should have
been given the jury in favor of the plain-
tiffs.

Summary judgment for the plaintiffs
was heretofore found unwarranted.
Lewis v. Lowry, 295 F.2d 197 (4 Cir.,
1961), cert. denied, 368 U.S. 977, 82 S.
Ct. 478, 7 L.Ed.2d 438 (1962). A small
operator in Kentucky, Lowry executed
the Agreement on or about May 1, 1955.
It was presented to him in Harlan Coun-
ty, Kentucky by Clarence Floyd, a field
agent for District 19, United Mine Work-
ers of America. The subsequent amend-
ments to the Agreement, September 1,
1955 and October 1, 1957, were also
signed by Lowry at Floyd's instance.

Lowry was fully aware of the nature
of the Agreement. He protested that he
could not "sign the contract and pay forty
cents a ton for the coal mined nor could

[he] pay the scale required" by the Agreement. He testified also that "Floyd told me to sign the contract and that would get the union off his neck and to pay what I could", that he told Floyd, "I would sign the contract with the understanding we would pay what we could to the Welfare Fund and would satisfy the employees as to wages", and that this was "acceptable" to Floyd. Later in his testimony, Lowry asserted, "My agreement was that I would pay what I could to the Welfare Fund, that that contract was a sham and I carried out what I said I would do". One of his workmen testified he heard Floyd say, "Pay what you can", but gave no context to the remark. Finally, Lowry says that his execution of the 1955 and 1956 amendments to the Agreement was "with the same understanding as the original agreement".

Lowry's operations continued from the time of his execution of the Agreement in May 1955 until September 1, 1958. On his production, at the rate stated in the Agreement, Lowry owed the Fund $52,795.40. He contributed only $3,264.00, leaving the balance now sued for of $49,531.40. At no time did Lowry pay the Agreement's wages.

Lowry's reports to the Fund were always based on the rate fixed by the Agreement. Every payment he made to the Fund was on a form supplied by the Fund designated as a Check Letter of Advice. It stated when, where and the amount of coal extracted. Lowry certified on each of them that: "The number of tons of coal produced for use and for sale, as shown above, represents, to my best knowledge and belief, the total amount of coal produced for use and for sale by this concern for the period specified". There were 26 of such letters. All of them were accompanied by a check except one—for the period of January-February 1956—when he certified he had no production.

Actually in January and February 1956 Lowry removed approximately 3,000 tons. In December 1957 the Fund's comptroller directed Lowry's attention to his report of 4,610 tons dug in 1955 and 1956, while he had reported to the State of Kentucky 10,000 tons in 1955 and 36,655 for 1956. In reply Lowry stated that the Fund was misinformed and his records showed that all payments due the Fund had been made to December 1, 1957. At the trial he admitted this statement was untrue. He stipulated for the purpose of the trial that his actual production for 1955 was 16,465.6 tons, for 1956 36,654.8 tons, and. for 1957 45,992.7 tons.

The Agreement required the operator to check off from the wages of its employees the membership dues, including initiation fees and assessments. Instead of a deduction, Lowry paid the dues himself but transmitted them on forms furnished by the union. He did employ the check-off to collect assessments. Furthermore, he adhered to the vacation provisions of the Agreement, both by not excavating during the period and by paying the employees for that time, increasing such payments as additions were prescribed in the Agreement. Lowry testified that whatever the vacation allowances the Agreement required, he made them.

■ The evidence relied upon by Lowry to prove the Agreement a feigned contract, it is obvious, consisted almost exclusively of his own oral testimony. Its force was directed to erecting an oral understanding prior to, or contemporaneous with, his execution of the Agreement flatly contradictory of the latter's provisions as to royalties and wages. The parol evidence rule, as the District Judge and the parties were quite mindful, generally would have precluded the reception of this proof as varying the Agreement. McCormick, Evidence, Ch. 24 (1954). This is the law of Kentucky, controlling here for the contract was made there. Cumnock-Reed Co. v. Lewis, 278 Ky. 496, 128 S.W.2d 926 (1939); Rock-Ola Mfg. Corp. v. Wertz, 282 F.2d 208, 210 (4 Cir., 1960). Instantly, however, until it had been fully developed, this evidence could not be ruled out for, if in the end it ex facie satisfied the principle involved, it

was admissible to construct Lowry's defense: that the Agreement never became his contract and was only a sham. Lewis v. Mearns, 168 F.Supp. 134 (N.D.W.Va. 1958), aff'd, 268 F.2d 427 (4 Cir., 1959). Cf. Rock-Ola Mfg. Corp. v. Wertz, supra, 282 F.2d 208, 210.

The principle of "pretensive" contracts is well established, as noted by Judge Haynsworth in the first opinion in this case, Lewis v. Lowry, supra, 295 F.2d 197, 198. His ample precedents prescribe this measure of evidence as needed to present the defense: "that the signed paper was never intended to be the record of the terms of the agreement." Burke v. Dulaney, 153 U.S. 228, 236, 14 S.Ct. 816, 819, 38 L.Ed. 698 (1894). If here the evidence on its face did not come up to this dimension, it was both inadmissible ab initio and legally insufficient for its purpose. We weigh its competency to sustain the defense.

Our opinion is that Lowry's evidence falls far short of condemning the Agreement as not genuine. This we conclude whether the degree of proof requisite to denounce a paper as untrue be that of clear and convincing evidence or only a preponderance. Cf. Rock-Ola Mfg. Corp. v. Wertz, supra, 282 F.2d 208, 211. Taking Lowry at his word, he acted upon and adhered to the Agreement in every respect save as to royalties and wages. Indeed he invoked its benefits. Specifically, he procured hospitalization and medical treatment for his employees under the Agreement. Thus he vouched it.

■ His conduct in adopting the Agreement, even partially, utterly repels his assault upon it as unreal. Thus defeated, too, is his charge it was superseded entirely by his putative oral contract. No unfulfilled condition indispensable to the inception of the Agreement was urged as in Lewis v. Mears, 297 F.2d 101 (3 Cir.), cert. denied, 369 U.S. 873, 82 S.Ct. 1142, 8 L.Ed.2d 276 (1962). No attempt was made to prove his execution of it the result of jest, fraud, duress, accident, mistake, or in-

competency. There was no mock document and no imposture suggested.

■■ But if there was a misrepresentation by the union agent, Floyd, amounting to fraud to induce Lowry to sign the Agreement, he was obligated to renounce it promptly—certainly when enforcement of it against him was sought. Grymes v. Sanders, 93 U.S. 55, 62, 23 L.Ed. 798 (1876). But until sued the present defense of no-contract was not even hinted. In response to the Fund's inquiries demanding compliance at intervals, he never repudiated the Agreement. His nonobservance of it Lowry argues was implied in his invariable use of even figures in reporting his production and royalties. As notice of dishonor this is too meagre.

With all his evidence accepted for its full worth, Lowry's defense was never even prima facie proved, and his contention should not have gone to the jury. Cf. Smith v. Bear, 237 F.2d 79, 86, 60 A.L.R.2d 1119 (2 Cir., 1956). A verdict ought to have been directed for the plaintiff.

In this conclusion we need not consider whether an oral contract, such as Lowry has asserted, is permissible under the Labor Management Relations Act, § 302(c), 29 U.S.C. § 186(c), allowing creation of the Fund, or § 8(d), 29 U.S.C. § 158(d), authorizing the collective bargaining agreement. See Judge Sobeloff dissenting in Lewis v. Lowry, supra, 295 F.2d 197, 200; Lewis v. Mearns, supra, 168 F.Supp. 134, 138, aff'd, 268 F.2d 427; and Gatliff Coal Co. v. Cox, 152 F.2d 52, 56, footnote (6 Cir., 1945). While these statutes do imply that a collective bargaining agreement should be, and require the establishment of a Fund to be, in writing, we do not depend upon these provisions to find against the verbal contract now pleaded in defense by Lowry. We have found nothing in the Federal decisional labor law to question the soundness of our conclusions. Cf. Smith v. Evening News Assn., 371 U.S. 195, 200, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962);

Lewis v. Benedict Coal Corp., 361 U.S. 459, 470, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960).

Accordingly, we will set aside the order under review, and remand the case for entry of a judgment in favor of the plaintiff-appellant and against Lowry in the sum of $49,531.40, with interest from August 31, 1958 until paid, together with costs.

Reversed and remanded.

SOBELOFF, Chief Judge (concurring).

Being of the opinion that the court decides this case correctly upon a valid ground, I concur; but I wish to indicate adherence to the views expressed in my dissent in the first appeal of this case, 295 F.2d 197 (1961), setting forth an independent ground leading to the same result.