John L. LEWIS, Henry G. Schmidt and Josephine Roche, as Trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950, Plaintiffs-Appellants,

v.

Ed OWENS, individually and trading as Owens Coal Company, Defendant-Appellee.

No. 15554.

United States Court of Appeals Sixth Circuit.

Nov. 27, 1964.

Charles L. Widman, Washington, D. C., Val J. Mitch, T. G. Dudley, Washington, D. C., Grant F. Knuckles, Pineville, Ky., M. E. Boiarsky, Charleston, W. Va., on brief, for appellants.

G. E. Reams, Harlan, Ky., G. M. Castle, Harlan, Ky., on brief, for appellee.

Before WEICK, Chief Judge, and O'SULLIVAN and PHILLIPS, Circuit Judges.

WEICK, Chief Judge.

The plaintiffs are Trustees of the United Mine Workers of America Welfare and Retirement Fund, which is an irrevocable trust created by the National Bituminous Coal Wage Agreement of 1950. The Agreement was industry wide and had many signatories.

The trustees filed suit in the District Court against Owens, alleging that on or about October 7, 1952, he and United Mine Workers of America, (hereinafter referred to as U.M.W.) entered into the National Bituminous Coal Wage Agreement of 1950 as amended, effective September 29, 1952; that on or about August 29, 1955 they entered into the National Bituminous Coal Wage Agreement of 1950 as amended, effective September 1, 1955; that on or about October 17, 1956 they entered into the Agreement as effective October 1, 1956; that under the terms and provisions of the agreements Owens was required to pay into the Fund forty cents ($.40) for each ton of coal produced for use or for sale; that Owens produced about 87,239.88 tons of coal for use or for sale and owed the Fund $34,895.95; and that he paid $12,256.00, leaving a balance due and owing of $22,639.95, for which amount they prayed for judgment.

Owens was a truck miner, engaged in a small mining operation in Kentucky. His defense was that he had an oral agreement with a field representative of

U.M.W., Floyd, who induced him to sign the three wage agreements; that the oral agreement concerned the royalty payments of forty cents per ton, and was to the effect that Owens need pay only what he could; and that the field representative made the same oral agreement with a number of other small mine operators. Floyd was not an agent or representative of the Fund.

The District Judge, over objection, permitted the introduction of this oral testimony. The case was submitted to the jury on a single interrogatory, reading as follows:

"Do you find from the evidence that the contracts referred to in the testimony, which fixed the obligation of the persons who signed them at 40 cents per ton for all coal produced for use or sale, were not intended by the parties to constitute the real agreement between the parties in respect to the obligation of the Defendant Ed Owens to pay royalty to the Plaintiffs, the Trustees of the United Mine Workers of America Welfare and Retirement Fund?

"(Answer 'Yes' or 'No')"

The jury answered this interrogatory "Yes," and the District Court thereupon dismissed the complaint.

The principal grounds of error alleged by the trustees were (1) that the District Court erred in admitting oral testimony to vary the written wage agreements, and (2) that national policy as set forth in the Labor Management Relations Act, 1947, 29 U.S.C. §§ 158(d) and 186(c) precluded a secret oral agreement that the signatory need pay, not according to the tenor of the obligations in the written agreements, but only what he could, and foreclosed such a defense.

The evidence with respect to the 1952 agreement disclosed that Owens told Floyd he could not pay the wage agreement and forty cents per ton royalty. Floyd replied that he should go ahead and sign it and get the men back to work, and that later they would "have

a contract out with the truck mines." Owens agreed to and did sign the agreement and the men returned to work. When the other two agreements were signed in 1955 and 1956 Owens again told Floyd that he could not make the payments, and Floyd advised him to go ahead and sign them and pay what he could, to which Owens agreed.

Floyd took the witness stand and denied that any such conversations took place. The jury, however, resolved this conflict in favor of Owens.

If the oral testimony was inadmissible, there was no support for the jury's answer to the interrogatory.

It was the theory of Owens that the three contracts which he signed were shams and parol evidence was admissible to prove that they were never to become effective. In admitting this evidence the District Court relied on the following cases: Kirtley v. Abrams, 299 F.2d 341 (C.A. 2, 1962); Lewis v. Mears, 297 F.2d 101 (C.A. 3, 1961); Lewis v. Lowry, 295 F.2d 197 (C.A. 4, 1961); Nice Ball Bearing Co. v. Bearing Jobbers, Inc., 205 F.2d 841 (C.A. 7, 1953); Long v. Jones, 319 S.W.2d 292 (Ky.1959); Johnson v. Dalton, 318 S.W.2d 415 (Ky.1958); Murphy v. Torstrick, 309 S.W.2d 767 (Ky.1958); Cumnock-Reed Co. v. Lewis, 278 Ky. 496, 128 S.W.2d 926 (1939).

In the Kentucky cases the court was dealing with the proposition that the entire agreement was a sham. In the case at bar only one provision of the entire agreement was in issue. The interrogatory did not submit to the jury the question whether the entire agreements were shams. It submitted to the jury only the issue whether the provisions with respect to payment of the forty cents per ton royalty were intended to constitute the agreement between the parties.

Lewis v. Mears, supra, involved the question whether there was any contract, because the union representative stated there would be no contract until the employer received a fully executed copy of the agreement from the union, and the employer never received it.

In Lewis v. Lowry, 295 F.2d 197, the Appellate Court held that there should be a trial of the issues on their merits rather than a disposition by summary judgment. The same court later considered the case on its merits in Lewis v. Lowry, 322 F.2d 453 (C.A. 4, 1963) and held that the evidence was insufficient to prove the oral agreement. In that case there was substantial performance of the alleged agreement, which the court held destroyed the contention that the agreement was a sham.

In the present case, Owens made twenty-nine payments totaling $12,-256.00 into the Fund, sending in a written monthly report as to tonnage with each check, as required by the agreement. Forms for the reports were furnished by the trustees. Many of the reports were inaccurate in that they did not state the correct tonnage. The total tonnage reported, on which royalties were paid, amounted to 30,640. The actual tonnage produced was 74,681. The shortage in tonnage reported amounted to 44,041, which was not in dispute. Under the written contracts the trustees were entitled to forty cents per ton on the shortage, or a total of $17,616.40.

After the agreements were signed, the employees worked under them. Owens complied with the wage agreements by paying vacation pay, by checking off and transmitting dues to U.M.W., by establishing a mine committee, and by providing Workmen's Compensation.

Owens and his employees received benefits under the agreements. The Fund issued hospital cards to them. Owens was a patient in the hospital for five days and received benefits from his hospital card.

It was undisputed that over the years while the wage agreements were in effect, Owens never advised any officer of U.M.W. or of the Fund, or his own employees, that he had an oral agreement excusing him from making payment of forty cents per ton royalty if he was unable to do so.

■ The trust fund was for the benefit of the employees, their families and dependents. The royalty payments were in reality another form of compensation to the employees. The duty to pay the royalties arose upon the production of coal for use or for sale. Lewis v. Benedict Coal Corp., 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1959).

Although Owens received a number of letters from the Fund calling his attention to errors or discrepancies in his reports, he did not at any time prior to the filing of this lawsuit, repudiate the written agreements or claim that they were not binding on him.

We think the facts of this case are somewhat similar to those in the case of Lewis v. Lowry, 322 F.2d 453, decided by the Fourth Circuit Court. We agree with this decision. The District Judge did not have the benefit of it at the time of the trial of this case.

■ In our opinion, parol evidence was not admissible to establish that one of the many provisions of the written contract was not to be binding. Since the agreement was substantially performed and Owens never acted to renounce it, we believe it is too late for him to do so now.

Without the oral testimony, which we have ruled inadmissible, there was not substantial evidence to support the jury's answer to the interrogatory.

Relative to the second issue of national policy, U.M.W. relied on Gatliff Coal Co. v. Cox, 152 F.2d 52 (C.A.6, 1945), in which we affirmed on the opinion of the District Judge. It so happens that the same District Judge tried the present case, but did not apply any rule of national policy. The national policy doctrine was not applied in Lewis v. Mears, supra, or in either of the Lewis v. Lowry cases, supra.

Since we have reached a conclusion which disposes of the case on another ground, it is not necessary for us to consider the issue of national policy.

The judgment of the District Court is reversed and the cause is remanded with instructions to enter judgment in favor of the trustees for $17,616.40, and interest and costs.

PHILLIPS, Circuit Judge. (concurring).

I concur in the result reached by the majority opinion. The parol evidence rule is correctly stated and applied, and the case is decided upon a valid ground.

I would prefer, however, that the decision be based on national labor policy, rather than the parol evidence rule. As a matter of substantive labor law, we should not permit a written collective bargaining contract to be varied by evidence of a contradictory oral agreement. Gatliff Coal Co. v. Cox, 152 F.2d 52 (C.A. 6). I prefer the dissenting opinion of Chief Judge Sobeloff over the majority opinion in Lewis v. Lowry, 295 F.2d 197 (C.A.4), cert. denied, 368 U.S. 977, 82 S. Ct. 478, 7 L.Ed.2d 438.

The Supreme Court has placed collective bargaining contracts in a special class. In Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972, the Court stated: "We conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws." In United Steelworkers of America v. Warrior and Gulf Nav. Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409, the Court said: "The collective bargaining agreement states the rights and duties of the parties. It is more than a contract; it is a generalized code to govern a myriad of cases * * *." Mr. Justice Brennan in his concurring opinion in United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 570, 80 S.Ct. 1343, 1364, 4 L.Ed.2d 1403, characterized a collective bargaining agreement to be "* * * the charter instrument of a system of industrial self-government * * *." In each of these cases it was stated that national labor policy must be a consideration in interpreting labor agreements.

The purpose of written labor agreements is to settle questions which, if left unsettled, would lead to industrial strife. Variation of such written contracts by evidence of prior or contemporaneous oral agreements is contrary to national labor policy. In my opinion national labor policy requires that evidence of oral agreements be inadmissible to vary the provisions of written labor contracts.