L. Mets LERWILL et al., Plaintiffs,

v.

INFLIGHT SERVICES, INC.,
Defendant.

No. C–70–244 ACW.

United States District Court,
N. D. California.

May 24, 1974.

On Motion to Amend Findings
July 24, 1974.

See also, D.C., 343 F.Supp. 1027.

David B. Mogilefsky, San Francisco, Cal., for plaintiffs.

Cullinan, Hancock, Rothert & Burns (Brian P. Burns and Thomas M. Bur-ton) San Francisco, Cal., Raoul Gersten, New York City, for defendant.

## MEMORANDUM OPINION AND FINDINGS OF FACT AND CONCLUSIONS OF LAW

WOLLENBERG, District Judge.

This is an action to enforce the overtime provision of a collective bargaining agreement. The case is properly before this Court under Section 301 of the Labor Management Relations Act, 29 U.S. C. § 185. The parties stipulated that trial would be held on the issue of liability only. Trial was held without a jury on November 12, 1973, and both parties have submitted extensive post trial briefs.

Plaintiff seeks to recover money allegedly due as overtime pay to himself and all other employees for work performed under a collective bargaining Agreement entered into in 1967 by Inflight Motion Pictures, Inc., International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, and Local 306 of the International. The Agreement in question applies to all members of the Union who are employed by Inflight and who perform work covered by the Agreement at airports and other locations throughout the United States and Canada. The relevant portion of the Agreement provides for overtime in the following terms:

> The work week for full time technicians shall be forty hours per week; eight consecutive hours per day in five consecutive days per week. . . . Overtime shall be paid in one hour segments, or for a fraction thereof, at the rate of time-and-one-half . . . .

Plaintiff's Exhibit 1, at 4, ¶ 7. Defendant claims that whatever claims for overtime pay plaintiffs might have had under the Agreement were waived informally and by practice. Defendant also claims that plaintiff Lerwill does not adequately represent the interests of the plaintiff class, composed of all employees

covered by the Agreement in question, because those employees demanded that they be permitted to work more than forty hours per week without receiving overtime, and that all concerned parties were satisfied with such an arrangement.

Interpreting the collective bargaining Agreement in question, which was in effect during the period January 1, 1967, to December 31, 1969, it is clear that the parties to that Agreement expressed themselves on the issue of overtime pay for work in excess of forty hours per week and that they agreed that overtime would be paid for such work. Defendant urges the Court to find that this provision was waived.

■■ Certainly plaintiffs could not have waived their rights under the Agreement. The possibility of such waiver was rejected by the Supreme Court in J. I. Case Co. v. Labor Board, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944):

> [A]n employee becomes entitled by virtue of the Labor Relations Act somewhat as a third party beneficiary to all benefits of the collective trade agreement, even if on his own he would yield to less favorable terms. The individual hiring contract is subsidiary to the terms of the trade agreement and may not waive any of its benefits, any more than a shipper can contract away the benefit of filed tariffs, the insurer the benefit of standard provisions, or the utility customer the benefit of legally established rates.

321 U.S. at 336, 64 S.Ct. at 579.

Defendant claims plaintiffs' right to overtime was waived by the International Union, which, acting as exclusive bargaining agent for plaintiffs, and because plaintiffs wanted it, condoned Inflight's practice of paying extra shifts at the straight time rate. They argue that since the issue was an item of negotiation for the 1967 contract, no notice under 29 U.S.C. § 158(d) was necessary in order to modify the contract since the parties actually negotiated the practice of extra shifts at straight time.

Congress has placed at the core of our national labor policy the principle that employers and unions negotiate collective bargaining agreements and perform consistently with them. Recognizing that strict adherence to this principle may at times impose hardships upon labor or management, Congress has sought to provide for these situations while preserving the basic principle by providing for modification of collective bargaining agreements before their natural terminations so long as orderly procedures involving notice and negotiation are followed. 29 U.S.C. § 158(d). Tolerating modifications through informal agreement or unspoken acquiescence, as appears to have been done in the present case, creates the danger of substituting for collective bargaining a system of subtle suggestions, coercion or intimidation. This is not what Congress has mandated, and this Court may not formulate and apply a rule which would so interpret the National Labor Relations Act.

Accordingly, the Court finds that plaintiffs were entitled to receive overtime compensation for whatever overtime work was performed while the 1967 contract was in effect.

■ Defendant claims this is not a proper class action under F.R.Civ.P. Rule 23(a)(3) & (4) because plaintiff's claims are not typical of those he seeks to represent and because plaintiff will not fairly and adequately represent the interests of that class. The contract in question provides in Paragraphs 2 and 3 that it applies to all members of the Union employed by the employer and performing the services covered by the contract anywhere in the United States and Canada. Defendants do not dispute that plaintiff is one of the persons covered by the Agreement. He is therefore a member of the class consisting of all persons covered by the same contract. Plaintiff's legal claims are identical to those of all other members of the class,

regardless of whether the others have chosen to assert them. Whether or not there was a contract, what the terms of the contract were and whether those terms were breached present common questions of law and fact for this Court to resolve. Plaintiff has diligently prosecuted this lawsuit; he has a real and immediate interest in the outcome which does not conflict with the interest of other class members, and, therefore, he can fairly and adequately represent the interests of the class. This lawsuit is properly maintained as a class action.

■■ Defendant raises the issue of whether plaintiff has standing to bring this action, or whether only the union which negotiated the contract in question may bring such an action. The test for whether an individual may bring an action under 29 U.S.C. § 185 is correctly stated by defendant as depending upon whether the right sought to be enforced is vested in the individual plaintiff or whether it is possessed by the bargaining unit as a whole. Western Addition Community Organization v. N. L. R. B., 158 U.S.App.D.C. 138, 485 F.2d 917, 937 (1973); Bryant v. International Union, U.M.W. of America, 467 F.2d 1, 2–3, n. 1 (6th Cir. 1972); Brown v. Sterling Aluminum Products Corp., 365 F.2d 651, 657 (8th Cir. 1966). Overtime pay is a right granted by the applicable collective bargaining Agreement and in which plaintiff has a personal interest. He therefore has the necessary standing to bring this action.

Based on the foregoing, this Court finds that defendant had a duty under the collective bargaining. Agreement under which members of the plaintiff class were employed to pay at the overtime rate for all overtime worked as defined in the Agreement. Members of the plaintiff class who worked such overtime shall have judgment for the amounts by which they were underpaid, with interest thereon computed at the legal rate. This case is referred to United States Magistrate Goldsmith who will determine the amounts by which each class member was underpaid and will then furnish this Court with appropriate findings and recommendations.

It is so Ordered.

## ON MOTION TO AMEND FINDINGS

After a non-jury trial, this Court filed findings of fact and conclusions of law granting judgment in favor of Plaintiffs. Defendant has petitioned the Court to amend its conclusion of law that the union representing Plaintiffs could not have waived their right to receive time-and-a-half pay for work in excess of forty hours per week. Since Defendant believes the testimony proves such a waiver actually occurred, it argues that the effect of so amending the Court's memorandum opinion filed May 24, 1974, would be to require entering judgment in favor of Defendant.

Defendant challenges the Court's conclusion that the Plaintiffs could not, either individually or collectively through their union, informally modify their collective bargaining agreement and thereby waive their right to receive overtime pay under the terms of the original contract and under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. In support of its motion, Defendant relies heavily upon NLRB v. Universal Services, Inc. and Associates, 467 F.2d 579 (9th Cir. 1972) (hereinafter the "Amchitka case"), and NLRB v. Scientific Nutrition Corp., 180 F.2d 447 (9th Cir. 1950).

The Amchitka case involved a very unusual set of facts, and, as will shortly be evident, the Court of Appeals for the Ninth Circuit limited its holding to those specific facts. In a collective bargaining agreement between Universal Services and Local 302 of the International Union of Operating Engineers, it was agreed the existing agreement would apply to Universal Services employees engaged in preparing for a nuclear test on the desolate and isolated island of Amchitka off the coast of Alaska. Large numbers of workers were needed in a short time in order to meet government deadlines for

the nuclear test, and more workers than Local 302 could provide were required, so members of Local 341 of the Construction and General Laborers' Union were channeled through Local 302 and sent to work for Universal Services on Amchitka. Eventually, as even more workers were needed, they were sent directly from Local 341 to Universal Services. Officials of Local 341 agreed orally with Universal Services that members of Local 341 working on the Amchitka project would be covered by the existing contract between Universal Services and Local 302, which contained a no-strike clause. When members of Local 341 went on strike, they were replaced, and Universal Services refused to rehire them after the strike. The question before the Ninth Circuit was whether Universal Services had, by not rehiring the employees who had participated in a strike, violated the employees' right to strike which is protected by section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1).

The Ninth Circuit, in denying enforcement of the order of the National Labor Relations Board, which found Universal Services in violation of the National Labor Relations Act, found that all parties agreed the no-strike clause in the agreement was particularly necessary under the circumstances because of the national security aspect of the Amchitka project and because of the time constraints against which the work had to be performed. While the agreement was not approved by the membership of Local 341, the agreement itself was reasonable, and the Ninth Circuit found that the time constraints against which everyone was working and the isolation of the Amchitka workers made the informal agreement proper under the circumstances, whereas in a different context another conclusion might be proper:

In conclusion, the practical expediency by which the parties solved the problem of labor supply, the communication and logistic difficulties involved between Anchorage, Amchitka and Seattle, and the consequences of working on a security-oriented government project necessitated informal disposition of labor matters *which ordinarily would have been the subject of more formal, and informative, negotiations and agreements.*

467 F.2d at 587 (emphasis supplied). The court recognized, 467 F.2d at 585 n. 8, that the acceptance of informal agreements between labor and management would not invariably be proper. *See* NLRB v. Cen-vi-Ro Pipe Corp., 457 F.2d 775 (9th Cir. 1972).[1]

The situation in the present case is distinct in every respect from that in the Amchitka case. Inflight and its employees did not labor under such exigencies of time or purpose as would make impractical or inadvisable the formal and considered modification of their collective bargaining agreement. Furthermore, and perhaps most importantly, while the Amchitka case concerned waiver by the union of the right to strike—a right which may be waived and which national labor policy prefers to have waived and replaced with mandatory arbitration, Alexander v. Gardner-Denver Co., 415 U.S. 36, at 46 n. 6, 94 S.Ct. 1011, 39 L.Ed.2d 147 (Feb. 19, 1974)—the present case concerns the employees' right to overtime pay under their collective bargaining agreement and the Fair Labor Standards Act, and, as will be discussed below, this is a right which neither the employees nor their union were in a position to waive.

1. *Cen-vi-Ro Pipe Corp.* held that informal agreements between labor and management may not defeat workers' statutory right to select their own bargaining unit. In that case a plant which had been closed some years earlier was reopened. Before any new employees were hired, the employer and the union orally agreed the plant would be operated as a closed shop just as it was under the old agreement which had expired when the plant closed. The Court of Appeals for the Ninth Circuit held that by entering into a collective bargaining agreement and agreeing to a closed shop provision before any employees were hired, the employer and the union violated the employees' statutory right to select their bargaining representatives. The agreement was therefore invalid.

In NLRB v. Scientific Nutrition Corp., *supra,* a small cannery and its employees adopted as their collective bargaining agreement the master agreement negotiated by the state-wide growers' association and the State Council of Cannery Unions. Other small canneries and union locals had adopted the same master agreement, and there was testimony that these adoptions were sometimes accompanied by modifications of terms. In at least one other case, the master agreement had been modified to provide for a closed shop. NLRB v. Flotill Products, Inc., 180 F.2d 441 (9th Cir. 1950). While the written agreement contained no closed-shop provision, the Ninth Circuit found that under the circumstances existing at the cannery in question, the agreement could have been modified informally to require union membership as a condition of employment:

> In an operation so small [i. e., no more than 26 employees], and where all employees are union members, an informal stipulation that union membership is a requisite of employment would seem to be a natural development of the relationship.

180 F.2d at 449. As an independent basis for its decision, the court found that the master agreement adopted by the cannery and its employees was not clear on the question of mandatory union membership. The conduct of the parties would therefore be the most reliable indicator of their intent with respect to the issue of a closed shop. All the testimony, the court concluded, indicated that the employer was acting in good faith in operating its business as a closed shop, and it did not, therefore, violate the National Labor Relations Act by discharging an employee for refusing to join the union.

■ In the present case, the number of employees is not so small, and they are spread among several airports located, in some cases, thousands of miles apart. These employees were not able to act in as concerted a manner as the 26 employees who worked together on a daily basis in *Scientific Nutrition Corp., supra.* There was testimony that Inflight's employees informally communicated with each other over communications equipment located at each Inflight facility, and other testimony described a meeting in San Francisco at which Inflight employees in the area expressed approval of working overtime at straight pay. But this action does not rise to the level of the "informal understanding" among all employees and the employer which, in *Scientific Nutrition Corp.,* was sufficient to constitute an oral modification of a collective bargaining agreement.[2] Furthermore, the informal agreement in *Scientific Nutrition Corp.* concerned whether the cannery would be operated as a closed shop, and this is a subject of legitimate negotiation between the parties. The present case is like NLRB v. Cen-vi-Ro Pipe Corp., *supra,* which, unlike *Scientific Nutrition Corp.,* concerned an agreement to waive rights which the parties lacked the power to waive.

2. In Lewis v. Owens, 338 F.2d 740 (6th Cir. 1964), a mine owner had agreed in writing to pay into a union welfare fund forty cents for each ton of coal produced. The union sued to recover unpaid amounts, and the mine owner asserted as a defense an alleged oral agreement with a union field representative that he need only pay into the fund whatever amounts he could afford. The Court of Appeals for the Sixth Circuit held that parol evidence could not be considered to vary the terms of a written agreement. A concurring opinion, in agreement with Judge Sobeloff's dissent in Lewis v. Lowry, 295 F.2d 197 (4th Cir. 1961), stated that

> The purpose of written labor agreements is to settle questions which, if left unsettled, would lead to industrial strife. Variation of such written contracts by evidence of prior or contemporaneous oral agreements is contrary to national labor policy. In my opinion national labor policy requires that evidence of oral agreements be inadmissible to vary the provisions of written labor contracts.

338 F.2d at 743; *see also* Lewis v. Lowry, *supra,* 295 F.2d at 201–202 (Sobeloff, C. J., dissenting).

Finally, Defendant argues that it acted in good faith at all times and should not now be penalized for cooperating with its employees and their union and trying to accommodate their preferences for working conditions, including the question of overtime pay. But good faith does not justify the wrongful withholding by an employer of overtime pay. Wirtz v. Malthor, Inc., 391 F.2d 1, 3 (9th Cir. 1968), and cases cited therein. Even if the Court were to find that Inflight's employees agreed to work extra shifts for straight time pay and thus waived their right to receive overtime, the waiver would have no effect because as a matter of law, employees may not waive their right to overtime compensation protected by the Fair Labor Standards Act.

The Act serves a public and a private purpose. Its enforcement provisions are intended to protect workers and their families, whom the Act is intended to benefit, see 29 U.S.C. § 202, but it is also intended to protect the employers who comply with its terms. Hodgson v. YB Quezada, 498 F.2d 5, at 6 (9th Cir. June 7, 1974); Wirtz v. Malthor, Inc., *supra,* 391 F.2d at 3; Senate Report No. 145, 87th Cong., 1st Sess., 1961, U.S.Code Cong. & Admin.News 1620, 1658–59 (1961). Employers in competition with Inflight presumably comply with their obligation of paying overtime for hours worked in excess of 40 per week. These competi-

tors are entitled to be protected from those who—intentionally or not—would secure a competitive advantage by violating the overtime provisions of the Fair Labor Standards Act. Hodgson v. YB Quezada, *supra*; Wirtz v. Malthor, Inc., *supra*.

Defendant concedes that the overtime provisions of the Fair Labor Standards Act may not be waived, but it argues that those provisions are not controlling here because this lawsuit was brought instead under section 301 of the Labor Management Relations Act. Defendant's reasoning is that rights which may not be waived because protected as a matter of public policy by the Fair Labor Standards Act, nevertheless may be waived when they are simply a matter of contract between the parties. But these parties may not do by contract what is prohibited by statute. *See generally* 6A Corbin on Contracts (1962). Even assuming these parties may waive statutory benefits intended solely for their own protection, they may not by contract waive rights intended to benefit others.[3]

Accordingly, it is hereby ordered that Defendant's motion to amend the Court's previous findings is denied, and

It is further ordered that, pursuant to F.R.Civ.P. Rule 52(b), this Order is supplementary to the findings and conclusions contained in the Court's memorandum opinion filed May 24, 1974.

---

3. Even assuming Defendant acted in good faith in withholding overtime pay—although there was testimony that Defendant knew that overtime pay was required by the Fair Labor Standards Act—it is still proper that Defendant bear the burden of non-compliance with the Act. The employer is in complete control of whether or not overtime is assigned and whether or not extra compensation for such work is paid. There was testimony for Defendant that extra shifts at straight time pay were permitted because employees demanded it, and it was done, therefore, to preserve labor peace. The law affords protection to an employer who resists unlawful demands of its employees. Since the employer is in the best position to determine whether it will comply with the overtime provisions of the Fair Labor Standards Act, it should increase the effectiveness of the Act if the employer is deprived of the benefits of even good faith violations.