## UNITED STATES v. AMERICAN TOBACCO CO. et al.

### No. 6670.

District Court, E. D. Kentucky, at Lexington.

Aug. 4, 1941.

Edward H. Miller and George H. Dession, Sp. Assts. to the Atty. Gen., Kurt Borchardt, and Hamilton O'Dunne, Sp. Attys., all of Washington, D. C., for plaintiff.

Chadbourne, Wallace, Parke & Whiteside, of New York City, Hunt, Bush & Lisle, of Lexington, Ky., Horace G. Hitchcock and Simeon Hyde, both of New York City, Bradley & Bradley, of Georgetown,

Ky., B. M. Webster, of New York City, L. P. McLendon, of Greensboro, N. C., J. C. B. Ehringhaus, of Raleigh, N. C., B. S. Womble, of Winston Salem, N. C., and Stoll, Muir, Townsend & Park, of Lexington, Ky., for defendants.

FORD, District Judge.

The point in controversy is whether it is competent for Hal R. Mohat, an expert witness offered on behalf of the Government, to testify to his conclusion "with respect to the kinds of tobacco in terms of Government grades bought by one of these companies, American, Liggett and Reynolds, and those grades bought by more than one of these three companies" during the 1939 marketing season, taking into account certain data introduced in evidence and assuming "that tobacco within a given Government grade, in the same belt, selling or reported as selling in this data at a price differential of one and one-half cents (1½¢) or more was recognizably different tobacco to a tobacco expert buyer."

No question is raised as to the qualifications of Mr. Mohat as an expert statistician, nor as to the competence of his testimony as an expert if limited to a mere statistical compilation of the data in evidence or his computations or statistical analyses thereof. Since the witness professes no qualifications as an expert in the grading of tobacco, conclusions reached by him in respect to kinds of tobacco in terms of Government grades or in respect to recognizable differences between grades or in respect to the significance of differences between the prices of grades being outside his field of expert knowledge must be predicated upon a hypothetical state of facts, and it is to the competence of such conclusions that the defendants direct their objections to his proposed testimony.

■ Before an expert opinion resting upon a hypothetical basis may be received as evidence, the facts constituting the basis of the opinion must be disclosed and their existence supported by evidence. In Atlantic Life Insurance Company v. Vaughan, 6 Cir., 71 F.2d 394, 395, the court thus expressed the familiar rule: "While the courts will give wide latitude to the reception of expert opinion evidence, we think it axiomatic that it must be based upon conceded or proved facts, and that a naked opinion, based obviously on mere speculation and conjecture, does not rise to the dignity of evidence, * * *."

■■ The assumption of fact set forth in the question propounded to the witness obviously represents only a part of his basic hypothesis. As to other underlying facts he is shown to have taken into account and considered voluminous data, all of which was prepared and introduced in evidence by other witnesses. There is no adequate disclosure of the particular facts found in this copious data which tend to support his conclusions or to which he attributed significance in forming his opinion as to the kinds of tobacco bought by the respective companies "in terms of Government grades". The mere showing that the witness "considered" or "took into account" documentary evidence brought into the case by other witnesses without definitely showing the particular points or features of the evidence upon which his opinion is predicated leaves the nature of his hypothesis so obscure it is impossible to determine whether the opinion is based upon facts or mere inferences. An expert opinion is not admissible in evidence when its factual foundation is nebulous. See 20 Amer.Jur. §§ 789–796, inclusive.

■ Moreover, since it appears from the evidence that throughout the marketing season in each tobacco belt, tobacco is sold and graded at different times, at different places and under varying conditions, to render the opinion admissible insofar as it rests upon the stated assumption "that tobacco within a given Government grade, in the same belt, selling or reported as selling in this data at a price differential of one and one-half cents (1½¢) or more, was recognizably different tobacco to a tobacco expert buyer", it would seem indispensable that the Government produce proof showing that at the times and under the conditions prevailing when the price differentials appeared they were reasonably attributable to a difference in the tobacco itself rather than to market price fluctuations, varying conditions under which sales were held at different times and places, variations in the judgment of different buyers or other factors having no relation to the quality or grade of the tobacco. Substantial evidence in this respect is lacking.

For the reasons indicated, the objections to the evidence must be sustained.