## LANGFELDER et al. v. UNIVERSAL LABORATORIES, Inc.

### No. 9329.

Circuit Court of Appeals, Third Circuit.

Argued May 6, 1947.

Decided Oct. 1, 1947.

William H. Foulk, of Wilmington, Del. (Charles Rosenbaum, of New York City, on the brief), for appellants.

Joseph P. Antonow, of Chicago, Ill. (Daniel O. Hastings, of Wilmington, Del., and Swiren Heineman & Antonow, of Chicago, Ill., on the brief), for appellee.

Before BIGGS, McLAUGHLIN and O'-CONNELL, Circuit Judges.

BIGGS, Circuit Judge.

The defendant, a Delaware corporation, known as Vadsco Sales Corporation, prior to its merger on June 29, 1943 pursuant to Section 59[1] of the General Corporation Law of Delaware with its wholly owned subsidiary Delletrez, Inc., also a Delaware corporation, was sued by the plaintiffs, citizens of New York, holders of 320 shares of the former 7% preferred stock of Vads-

---

[1] Laws of Delaware of 1937, Vol. 41, c. 131, Section 2. See also Rev.Code Delaware 1935, Section 2091.

co, for a money judgment for alleged breach of the provisions of Article IV(g)[2] of Vadsco's charter. Jurisdiction in the case is based on diversity. After answer, no genuine issue of fact being presented, motions for summary judgments were made by both parties. The court below gave judgment for the defendant. See D.C., 68 F.Supp. 209. The District Court relied in large part on the decision of the Vice-Chancellor of Delaware in Porges v. Vadsco Sales Corporation, Del.Ch., 32 A.2d 148 (involving the very merger · here under discussion), on that of the Supreme Court of Delaware in Federal United Corporation v. Havender, 24 Del.Ch. 318, 11 A.2d

331, and on our ruling in Hottenstein v. York Ice Machinery Corporation, 3 Cir., 136 F.2d 944. See also Root v. York Corporation, D.C.Del., 56 F.Supp. 288, and the decision of the Supreme Court of Delaware in Keller v. Wilson & Co., Inc., 21 Del.Ch. 391, 190 A. 115. The ruling in the case at bar must turn on the interpretation of these decisions since there is no Delaware case specifically in point on the instant facts.

The theory of the plaintiffs' case may be stated as follows. Until the day of the merger each share of the 7% preferred stock had a par value of $100 and the accrued dividends on each share amounted to

---

[2] "(g) In the event of any reduction in the capital stock of the corporation resulting in a reduction of the preferred stock either as to number of shares or as to the par value thereof, except a reduction in the number of shares thereof for the purpose of effecting a statutory cancellation of preferred stock purchased for retirement or redeemed, or in the event of a voluntary dissolution of the corporation, the holders of the shares of said preferred stock affected by such reduction and to the extent thereof, or affected by such voluntary dissolution, shall be entitled to receive and shall be paid an amount in cash not less than one hundred and ten per cent (110%) of the amount of the reduction or in the case of voluntary dissolution one hundred and ten per cent (110%) of the par value of their shares, and in any case all cumulated and unpaid dividends thereon and a sum equal to a dividend at the rate of seven per cent (7%) per annum from the last dividend date to the date of such reduction or voluntary dissolution."

See also subparagraphs of Article IV,

"(a) The holders of the preferred stock shall be entitled to receive when and as declared from the surplus or from the net profits arising from the business of the corporation, dividends at the rate of seven per cent (7%) per annum and no more, payable quarterly on the dates to be fixed by the by-laws or by the board of directors. Dividends on the preferred stock shall be cumulative, and shall be payable before any dividend on the common stock shall be paid or set apart, so that if in any year dividends amounting to seven per cent (7%) shall not have been paid thereon or set apart therefor, the deficiency shall be paid or shall be set apart before any dividend shall be paid upon or set apart for

the common stock. If for any reason the corporation shall fail to declare and pay on any dividend date the installment of the fixed cumulative seven per cent (7%) dividend in whole or in part, then payable to the holders of the preferred stock, the unpaid part of such installment of dividend shall be declared and paid, or funds set apart for the payment thereof, before the whole or any part of any subsequent maturing dividend shall be declared or paid on such preferred stock.

"(f) Upon any dissolution or liquidation of this corporation except as hereinafter provided, or in the event of insolvency, or upon any distribution of capital, there shall be first paid to the holders of the preferred stock then outstanding the par value thereof, and an amount equal to all cumulated and unpaid dividends thereon, and an additional amount equal to a dividend at the rate of seven per cent (7%) per annum from the last dividend date to the date of such distribution, and the remaining assets shall be distributed to the holders of common stock."

See also subparagraph (i) on which the defendant strongly relies, which in pertinent part provides as follows:

"(i) The corporation shall not without the affirmative vote or written assent of the holders of at least a majority in amount of the outstanding preferred stock, in addition to the requisite vote or assent of the holders of the common stock, create or authorize any shares of stock which shall have any preference or priority over, or any additional shares of stock which shall be on a parity with the preferred stock authorized to be issued hereunder, nor alter in any manner the rights or preferences of said preferred stock."

more than $88.67 a share.[3] Under the merger each share of the former 7% preferred stock was converted into one share of new preferred and five shares of new common. Each share of the new preferred is without par value but has a stated value of $50 and each share of the new common has a par value of $1; the accumulated dividends on the former preferred were wiped out, the new preferred stock carrying cumulative dividends of $2.50 a year.[4] The plaintiffs contend that their preferred stock was reduced both as to number and as to par value and that, therefore, pursuant to subparagraph (g) of Article IV of Vadsco's charter they are entitled to "be paid an amount in cash not less than * * * (110%) of the amount of the reduction" with accumulated and unpaid dividends and a sum equal to a dividend at the rate of 7% per annum from the last dividend date to the date of the merger; that by reason of the foregoing they are entitled to a money judgment in the amount of $46,518.40 and interest from June 29, 1943, the amount of damages being estimated, interest aside, at the rate of $145.37 for each share of the preferred stock owned by the plaintiffs. The defendant replies that under the doctrine of the Havender case by majority vote of the stockholders acting pursuant to the provisions of subparagraph (i) of Article IV of the charter, it could and did convert the plaintiffs' preferred stock into new preferred and new common under the plan as specified, thereby wiping out the plaintiffs' accumulated dividends as well as their rights under subparagraph (g); that if the plaintiffs were dissatisfied with the result, they had the right to proceed to an appraisement under Section 61 of the Delaware Corporation Law.[5] This brings us directly to a discussion of the cases.

After the decision of the Supreme Court of Delaware in the Keller case it was thought that a preferred stockholder of a Delaware corporation could not be deprived of his right to accumulated dividends by an amendment to the corporate charter. The decision in the Havender case, however, was to the effect that though a preferred stockholder could not be deprived of accumulated dividends by a proceeding pursuant to Section 26[6] of the Delaware Corporation Law as the Keller case had held, the identical result could be achieved legally by the merger of the corporation with a totally owned subsidiary pursuant to Section 59. See the comments on this technique in the Hottenstein case in which the subsidiary corporation had been created seemingly for the sole purpose of effecting the merger. In the Havender case Mr. Chief Justice Layton, commenting on the rationale of the Keller case, its relation to the facts of the Havender case and to the philosophy of Section 59, stated at 24 Del.Ch. 318, 11 A.2d at page 338: "The rationale of the decision [in Keller], stated and reiterated, was that when the nature of the right of the holder of cumulative preferred stock to unpaid dividends accrued thereon through time was examined in a case where the right was accorded protection when the corporation was formed and the stock was issued, it was such a right that could not be destroyed by corporate action taken under an authority subsequently conferred. In such circumstances, the right was considered to be of the dignity of a fixed contractual right in the nature of a debt. The decision has no application beyond its philosophy. It has no bearing on the question in dispute. The substantial elements of the merger and consolidation provisions of the General Corporation Law as they now appear have existed from the time of the inception of the law. It is elementary that these provisions are written into every corporate charter. The shareholder has notice that the corporation whose shares he has acquired may be merged with another corporation if the required majority of the shareholders agree. He is informed that the merger agreement may prescribe the terms and conditions of the merger, the mode of carrying it into effect, and the manner of converting the shares

---

[3] Dividends had accrued on each share of the preferred stock in the amount of $88.67 for each share as of March 31, 1943.

[4] See Article VII of the Agreement of Merger.

[5] See Laws of Delaware, 1943, Vol. 44, c. 125, § 6, approved April 15, 1943.

[6] Rev.Code Delaware 1935, § 2058.

of the constituent corporations into the shares of the resulting corporation. A well understood meaning of the word 'convert', is to alter in form, substance or quality. Substantial rights of shareholders, as is well known, may include rights in respect of voting, options, preferences and dividends. The average intelligent mind must be held to know that dividends may accumulate on preferred stock, and that in the event of a merger of the corporation issuing the stock with another corporation, the various rights of shareholders, including the right to dividends on preference stock accrued but unpaid, may, and perhaps must, be the subject of reconcilement and adjustment; for, in many cases, it would be impracticable to effect a merger if the rights attached to the shares could not be dealt with."

In the light of the foregoing a fundamental question to be disposed of in the case at bar, assuming arguendo that there was a "reduction" of the plaintiffs' stock within the meaning of subparagraph (g), is whether a merger under Section 59 will wipe out the contract in favor of the plaintiffs imposed on the corporation by that provision of its charter. It must be assumed of course that the conversion is not unfair, inequitable or fraudulent since that was decided expressly by the Porges decision. Cf. the dictum[7] of this court in the Hottenstein case. More broadly the question can be put as follows: Can any contract provision of a charter, designed to operate in favor of the stockholder, be obliterated by the Section 59 technique, the stockholder's shares being converted into new and different kinds of stock? A hypothetical case will give point we believe to the present discussion. Suppose subparagraph (g), as it is set out in note 2 supra, had had inserted in it after the word "any", first line, the words "merger resulting in any", so that the sentence would read, "In the event of any merger resulting in any reduction in the stock of the corpora-

tion resulting in a reduction of the preferred stock * * *", and suppose further that a new sentence had been added after the period following the word "dissolution" at the end of the subparagraph as it now exists as follows: "A debtor-creditor relationship shall exist immediately upon reduction between the corporation and each preferred stockholder." With such provisions before it would a Delaware court hold that by the mechanism of Section 59 the right of the preferred stockholders to be paid the amount of a reduction in cash could be wiped out?

An easy answer to the hypothetical case which we have put springs immediately to mind; namely, that the Chancellor of Delaware might hold that the precise contingency bargained for had occurred and that since it had taken place, the corporation was bound on its contract. But if the Havender doctrine, as quoted above from Mr. Chief Justice Layton's opinion, be given the full scope for which the defendant in the instant case contends, the answer must be a very different one. Allowing the doctrine fullest scope we think it would have to be conceded that any and all rights inherent in any class of stock could be obliterated by merger unless the terms of the merger agreement were so unfair, inequitable or fraudulent as to meet the bar of the Porges decision or that set up in this court's opinion in Hottenstein.

█ We are compelled, of course, to follow the law of Delaware as was the court below. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. If subparagraph (g) read as in our hypothetical case, would the Delaware courts hold that the rights given could be converted in a Section 59 proceeding? Compare the charter provisions of the "old" St. Louis Structural Steel Company, a Delaware corporation, and the certificates of preferred stock of that company which contained the following provision: "The consolidation or merger of such company

---

[7] We stated, 3 Cir., 136 F.2d at page 953: "A court of the United States bound by the rule of Erie R. Co. v. Tompkins (304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487), is powerless to afford aid to the stockholder until reclassification reaches that degree of unfairness where it amounts to a cancellation of the preferred stockholders' accumulated unpaid dividends without adequate compensation therefor under the law * * *." See also note 16 cited to the text.

at any time * * * with any other company * * * shall [not] in any way impair the rights of the preferred stock." The company merged with another. An Appellate Court of Illinois held that the provision of the certificate of incorporation that a merger should in no way impair the rights of the preferred stock was contrary to the law of Delaware as expressed by Section 59. See Jones v. St. Louis Structural Steel Co., 267 Ill.App. 576, 580. So long as the rights of the plaintiffs in the instant case lie within the confining box of stock ownership, even under the provisions of our hypothetical subparagraph (g), the principle enunciated by Mr. Chief Justice Layton in the Havender case would apply unless the reorganization was so unfair as to meet the bars of the Porges or Hottenstein decisions.

Only by giving the plaintiffs a status equivalent to that of creditors can they escape from the box of the stockholder-corporation relationship and from the effects of Havender. For analogy see Wilmington Trust Company v. Wilmington Trust Company, Del.Ch., 15 A.2d 665, and Selly v. Fleming Coal Co., 7 W.W. Harr. (37 Del.) 34, 180 A. 326[8] We think that the words of subparagraph (g), as actually written in Vadsco's charter, providing that the preferred stockholders "shall be paid an amount in cash" equal to the amount of any reduction plus dividends, were employed by the framers of the subparagraph with the intention of creating a debtor-creditor relationship between the corporation and its preferred stockholders if and when a reduction took place and that the words actually employed in the subparagraph are as effective to create such a relationship as the more specific language inserted in the subparagraph under our hypothesis. Assuming arguendo that the Section 59 merger resulted in a "reduction" within the purview of subparagraph (g), the question which we must answer is: Did the plaintiffs become creditors when the merger was effected?

We are forced to the conclusion that the courts of Delaware would not so hold. We believe that the Delaware tribunals would take the position that until the happening of the contingency provided for, viz., the reduction, the plaintiffs' rights were purely contractual, inherent in and incidental to their stock ownership; that these rights, whether as set out in the hypothetical subparagraph (g) or in the subparagraph as actually written, would fall within the all-inclusive scope of the Havender doctrine and would be converted with all other contractual rights inherent in stock ownership. We think that the Delaware courts would give a short answer to a contention by the preferred stockholders that they became creditors by reason of the merger by holding that the preferred stockholders were still stockholders when the merger took place. In so ruling we state, as did the court below, that it is our duty under Erie R. Co. v. Tompkins to construe the law of Delaware as we think it is; not, as we may think it should be.

We entertain little doubt that the framers of subparagraph (g) employed the phrase last quoted for the purpose of causing those who purchased the preferred stock to believe that, if there was a "reduction" within the purview of the subparagraph, the amount of the reduction forthwith would be paid to them in cash. If there were no other consideration involved we would have little hesitancy in holding that the defendant was estopped from not paying the amount of the reduction in cash. But no estoppel may be maintained against the corporation for an estoppel effective against Vadsco would be in derogation of the policy of Section 59 as enunciated by Mr. Chief Justice Layton in the Havender decision. An estoppel cannot be based on an avoidance of a statute.

For the reasons stated we think that the plaintiffs cannot maintain their cause of action. This conclusion renders it unnecessary to discuss the provisions of Section 61 of the Delaware Corporation Law, the appraisement section, asserted by the defendant as an additional defense, or any of the remaining points raised by the parties.

The judgment of the court below will be affirmed.

---

8 It was held in these decisions that declarations of lawful dividends initiate the relationship of debtor and creditor between corporation and stockholders.