Sharyn M. SHEATS, P. Lloyd Sheats and Catherine T. Sheats, Administratrix of the Estate of John M. Sheats, Plaintiffs,

v.

Robert Ellis BOWEN and the Bradford National Bank of Bradford, Pennsylvania, Executor of the Estate of Oscar Hannum, Defendants.

Civ. A. No. 3675.

United States District Court,
D. Delaware.

Oct. 22, 1970.

L. Vincent Ramunno and Joseph T. Walsh, Wilmington, for plaintiffs.

James F. Kipp of Becker, Kipp & Reardon, Wilmington, for defendants.

OPINION

LATCHUM, District Judge.

Defendants have moved for a new trial generally or for orders of remittitur [1] on the grounds that the

---

1. This Court may not absolutely order a remittitur of a jury verdict found to be excessive; it may, however, grant the plaintiff an election either to remit a stated amount of the verdict or submit to a new trial. Kennon v. Gilmer, 131 U.S. 22, 9 S.Ct. 696, 33 L.Ed. 110 (1889); May v. Ellis Trucking Co., 243 F.2d 526 (C.A.6, 1957), cert den. 355 U.S. 816, 78 S.Ct. 18, 2 L.Ed.2d 33 (1957).

jury verdicts returned on the compensatory claims of two of the plaintiffs were contrary to the evidence and excessive, that the amounts awarded on the punitive damage claims were disproportionate to the awards for compensatory damages, and that the Court erred in refusing to strike the husband's claim for punitive damages for his loss of consortium.

This diversity action[2] for personal injuries, loss of consortium and wrongful death arose out of an automobile accident which occurred on July 29, 1967 on U. S. Route 13 just south of Felton, Delaware.

The accident occurred when the automobile being driven by defendant, Robert Ellis Bowen ("Bowen"), and owned by Dr. Oscar Hannum ("Hannum"), crossed the median strip from the northbound lanes of U. S. Route 13, a four lane divided highway, and struck almost head-on the automobile being driven in the inside southbound lane by plaintiff, P. Lloyd Sheats ("Lloyd") in which Sharyn Sheats ("Sharyn"), his wife, and John M. Sheats ("John"), his brother, were passengers. As a result of the collision John was killed and Sharyn was severely injured.

Defendant Bowen testified that he had been employed by Hannum, an 85 year old retired physician from Bradford, Pennsylvania, as a handyman at a rooming house which the doctor operated in St. Petersburg, Florida. (Tr. 244).[3] Because of lack of renters, Hannum decided to close the house for the summer and return to Pennsylvania. Needing someone to act as his chauffeur Hannum called on Bowen. (Tr. 245).

On Friday, July 28, 1967, Bowen and Hannum left St. Petersburg at seven o'clock in the morning. (Tr. 95). With the exception of a fifty mile stretch Bowen drove the entire distance to Florence, South Carolina, arriving there about dark. (Tr. 96). After about seven hours of sleep (Tr. 246) Bowen and Hannum resumed their trip around seven o'clock the next morning. (Tr. 96). Bowen admitted that he was tired when they started out Saturday morning. (Tr. 248).

With only a short break for lunch, Bowen drove all the way to a motel at the north end of the Chesapeake Bay Bridge Tunnel, arriving there about 4:-30 or 5:00 in the afternoon. (Tr. 101–102; 105; 249). However, being eager to arrive in Dover, Delaware by nightfall, Hannum refused to stop for the night at the motel and insisted that Bowen drive on (Tr. 103), despite the fact that Bowen was, as he put it, "so tired that I was ready to keel over." (Tr. 250). No stops were made before the accident occurred. (Tr. 104). In spite of Bowen begging Hannum to stop and spend the night at one of the motels along the highway, Hannum insisted that they continue to Dover. (Tr. 252).

At a point just south of Felton, Delaware, about 142 miles from the north end of the Chesapeake Bay Bridge Tunnel (Tr. 43), the accident occurred. The automobile being driven by Bowen diagonally crossed the grass median strip of the four lane dual highway (Tr. 13–15) and collided with the right front of the Sheats automobile, causing heavy damage to both vehicles. (Tr. 17).[4] Both Bowen and Hannum were seriously injured. (Tr. 18). Sharyn suffered a fractured arm, fractured pelvis, dislocated elbow, and severe cuts on her thigh and ankle. (Tr. 133–137). John was killed in the accident. (Tr. 16, 55).

This action was commenced on February 28, 1969 against Bowen and the

---

2. The plaintiffs were Delaware citizens; the defendant Bowen was a North Carolina citizen and the defendant executor was a Pennsylvania citizen. The amount in controversy exceeded $10,000 exclusive of interest and costs. Jurisdiction existed under 28 U.S.C. § 1332.

3. Tr. refers to Trial Transcript.

4. See also Pl.Ex. 1–4, photographs of the vehicles taken at the accident scene by the Delaware State Police.

Bradford National Bank of Bradford, Pennsylvania, executor of the estate of Oscar Hannum, who had died prior to the filing of this action. Sharyn Sheats sought damages for her personal injuries and loss of wages. Lloyd sought damages for his loss of consortium caused by his wife's injuries and for medical expenses incurred to effect a cure of his wife. Catherine T. Sheats, as administratrix, sued to recover damages for the wrongful death of John.

After a jury trial, held on March 9 and 10, 1970, the jury returned a verdict of $60,000.00 compensatory and $20,000.00 punitive damages for Sharyn Sheats, a verdict of $7,500.00 compensatory and $12,500.00 punitive damages for P. Lloyd Sheats, and determined that John M. Sheats would have left an estate of $800,000.00 which should be discounted at a rate of 4.0 per cent.[5] The parties had stipulated prior to trial that John's life expectancy was 56 years.

On March 16, 1970 the present motion was filed. The motion was thereafter briefed and argued on September 29, 1970.

■ It is well established that the granting or denying of a motion for new trial rests in the sound discretion of the trial court, especially where the ground alleged is that the verdict was against the weight of the evidence, that the amount of damages awarded was excessive or that the trial was unfair to the moving party. Montgomery Ward and Co. v. Duncan, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940); Bowers v. Pennsylvania R.R. Co., 182 F.Supp. 756 (D.Del.1960), aff'd 281 F.2d 953 (C.A.3, 1960); Eastern Air Lines, Inc. v. United States, 110 F.Supp. 499 (D.Del.1953). Where there is sufficient evidence upon which a jury could have returned a verdict for either party, the verdict will not be set aside and a new trial granted. Hollett v. Dundee, Inc., 272 F.Supp. 1 (D.Del.1967). For a new trial to be granted "the verdict must be manifestly and palpably against the evidence in the case." Weed v. Lyons Petroleum Co., 294 F. 725, 733 (D.Del.1923), aff'd 300 F. 1005 (C.A.3, 1924). It is not proper for the trial judge to substitute his opinion for that of the jury by granting a motion for a new trial. Lind v. Schenley Industries, Inc., 278 F.2d 79 (C.A.3, 1960), cert. den. 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960).

■ In considering whether the jury verdicts are against the clear weight of the evidence and the damages are excessive, this Court may reweigh the evidence, but it should not exercise its discretion to grant a new trial unless the amounts of the verdicts shock the judicial conscience of the Court. Nowland v. Shoe Corporation of America, 47 F.R.D. 6 (D.Del.1969).

*Compensatory Damages Of Sharyn Sheats*

An extensive amount of evidence was presented with respect to the damages sustained by Sharyn Sheats. Dr. James M. Chase, Jr., who first saw Sharyn in the hospital emergency room where she was taken after the accident, testified that she suffered a fractured pelvis, fractured upper arm, dislocated elbow joint, and wounds of the elbow, thigh, and ankle. (Tr. 131). She also underwent a two hour emergency operation on her elbow. (Tr. 133). Sharyn testified that she was in pain from the time of the accident until after reaching the hospital. (Tr. 67).

As a result of the injuries Sharyn spent twenty-eight days in the hospital. (Tr. 29, 139). During that time she experienced severe pain. (Tr. 69–70). For an additional month after her release from the hospital she had to be cared for by her mother-in-law. (Tr. 30). Sharyn was required to wear a cast on her arm for almost two months and to use a sling for another month. (Tr. 140–141). During the month at her

---

5. After being reduced to present value, using the 4.0 per cent rate and the life expectancy of 56 years, judgment for the

Administratrix of the Estate of John M. Sheats was entered for $100,080.00.

mother-in-law's home her pain continued. (Tr. 70, 44). For some time after the accident therapy was necessary. (Tr. 46, 141–2).

As a consequence of the accident Sharyn was out of work until January of 1968. (Tr. 46). She testified that she lost twenty-three weeks of work (Tr. 72) and that her wages were $82.00 per week. (Tr. 64). Her total loss in wages amounted to $1,886.00.[6]

Sharyn sustained certain permanent disabilities. Her treating physician, Dr. Chase, testified that, based upon a standard guide recognized by the medical profession, there was a 45 per cent permanent disability in the upper extremity and 20 per cent in the individual as a whole. (Tr. 144). Expert medical witnesses testifying for the defense placed permanent disability in the individual as a whole at about 15 per cent.[7] As a result of her injuries Sharyn was unable to bowl, a sport she had enjoyed prior to the accident. (Tr. 78, 47). In addition she was left with obvious scars on her arm and leg and the leg scar has been a continuing source of embarrassment when wearing a bathing suit. (Tr. 75–77, 48). Some pain and discomfort has continued since the accident. (Tr. 77–78, 52).

■ In light of the evidence adduced this Court is unable to hold that an award of $60,000.00 for the injuries and disabilities described shocks the conscience of the Court, is contrary to the evidence or is grossly excessive. Therefore, defendants' motion for new trial or remittitur will be denied as to the compensatory damages awarded for the personal injuries and wage loss claims of Sharyn Sheats.

### Compensatory Damages For Wrongful Death Claim

The defendants' motion for a new trial or remittitur in the action brought for the wrongful death of John M. Sheats is based upon alleged misconduct or miscalculations made by the plaintiffs' expert witness, Dr. Francis Tannian, an economist and associate professor at the University of Delaware. Dr. Tannian testified that the "simple average savings" was "on an annual basis in the United States now around 18 percent." (Tr. 203). For this figure he cited the Federal Reserve Bulletin of February 1970. Dr. Tannian actually used what he termed a "conservative" figure of 15 per cent in his calculations. (Tr. 203–206). The defendants cite page A69 of the February 1970 Federal Reserve Bulletin and call attention to the fact that a comparison of the "personal income" figure with the "personal saving" figure shows that the "saving" figure is about 5% of the "income" figure.

The plaintiffs call attention to page A71.3 of the same report and note that taking the figures on that page, the "gross savings" figure is close to 20 per cent of the "personal income" figure. The plaintiffs contend that Dr. Tannian's expertise was demonstrated and that the defendants' allegations about the incorrectness of the figures are unfounded and unproved.

■■ It is established that where expert testimony is based on a stated assumption there must be some evidence that the assumption is valid. United States v. American Tobacco Co., 39 F. Supp. 957 (E.D.Ky.1941). In order for an expert to base his opinion on a study it is necessary that he be able to testify of his own knowledge as to the nature and extent of the source from which statistics were gathered. See Bogacki v. American Machine & Foundry Co., 417 F.2d 400 (C.A.3, 1969).

In Ramsay v. United States, 55 F.2d 333 (W.D.Mo.1931) an accountant testified that the value of a business could be established by using the earnings

---

6. The parties agreed in the Pretrial Order this was her total loss of wages.

7. One placed the disability at "approximately 15 per cent," (Tr. 158), and the other put it at 10 to 15 per cent. (Tr. 177). Neither denied that there was permanent disability.

record of the business and then capitalizing it at 15 per cent. In rejecting this evidence as having no probative value because the 15 per cent figure seemed to be purely arbitrary the Court said, "One who is shown to be qualified as an expert in values may give testimony having probative value if the basis of fact given by him in support of his opinion is reasonably sufficient to give value to his opinion." 55 F.2d at 334.

■ Because the figures on page A71.3 of the February, 1970 Federal Reserve Bulletin seem to support Dr. Tannian's testimony and because no one has challenged the validity of the statistics in the Bulletin or questioned Dr. Tannian's knowledge as to the nature and scope of the studies which produced the statistics, this Court does not find that Dr. Tannian's testimony was lacking in factual basis. At no time in either the direct or cross examination of Dr. Tannian was it brought out which, if either, set of figures he relied on to form the basis for his opinion. In the absence of a showing that false or erroneous data was actually used the Court will not assume on the bare assertions of the defendants that Dr. Tannian, an expert in economics, used the wrong set of data as a basis of his calculations.

The defendants also contend that it was improper for Dr. Tannian to use a 4.0 per cent discount figure and a 5.0 per cent savings interest figure. However, the reasons why Dr. Tannian used the different figures is clearly shown in his testimony. (Tr. 240–241).

It should also be noted that the defendants had the right to produce any expert witnesses they desired to attempt to refute, contradict, or clarify the testimony of Dr. Tannian and yet they produced none. The defendants did not object or contest Dr. Tannian's qualifications as an expert witness. His testimony was uncontradicted. The defendants' counsel cross examined Dr. Tannian as to the basis of his opinion. (Tr. 219). "An unsuccessful litigant is not entitled to a new trial of an issue already litigated and which could have been raised at the original trial." F. A. R. Liquidating Corp. v. Brownell, 130 F. Supp. 691, 695 (D.Del.1955), aff'd 223 F.2d 128 (C.A.3, 1955).

Furthermore, the Court gave the following cautionary instruction to the jury in regard to Dr. Tannian's testimony:

"The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. An exception to this rule exists as to those called 'expert witnesses', who by education and experience have become expert in some art, science, profession or calling and may state an opinion as to relevant and material matters. You should consider each expert opinion received in evidence and give it such weight as you think it deserves. If you should decide that the opinion of an expert witness is not based on sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, you may reject the opinion entirely."

The jury was thus instructed to disregard Dr. Tannian's testimony if they found it unworthy of belief.

In light of these factors the Court will deny defendants' motion for a new trial with respect to the wrongful death claim of John Sheats' administratrix.

*Disproportionality Of Punitive Damage Awards*

■ In 1965 the Delaware Supreme Court in the case of Reynolds v. Willis, 209 A.2d 760 (Del.Supr.1965) adopted the rule that an award for punitive damages may not be disproportionate in amount to the award given for compensatory damages.[8] Since that time it does not appear that the Delaware Su-

---

8. See C. Morris, "Punitive Damages in Tort Cases," 44 Harv.L.Rev. 1173, 1180– 1182 (1931); McCormick, Damages, p. 298 (1935).

preme Court has had occasion to re-examine or interpret the meaning of this rule as applied in Delaware. The Superior Court, however, discussed the rule in the case of Aastad v. Riegel, 262 A.2d 652 (Del.Super.1970). In upholding a punitive damage award the Court in *Aastad* said, "There is no set rule or ratio between the amount of compensatory damages and punitive damages that can be laid down. The amount of such damages must depend upon the facts of each particular case." 262 A.2d at 655. This appears to be in accord with the cases from other jurisdictions (following a proportionality rule) which hold that no specific mathematical relationship is required between the punitive damage award and the compensatory damage award. See Bell v. Preferred Life Assurance Society, 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15 (1943) (Alabama law).

The Delaware Supreme Court in *Reynolds* cited the Pennsylvania case of Hughes v. Babcock, 349 Pa. 475, 37 A.2d 551 (1944) in adopting the proportionality rule. Tracing the history of this rule it appears that the seminal case on this point in Pennsylvania is Rider v. York Haven Water & Power Co., 251 Pa. 18, 95 A. 803 (1915). That case adopted the rule for Pennsylvania as set forth by the Supreme Court of Kentucky in Buford v. Hopewell, 140 Ky. 666, 131 S.W. 502 (1910). The Court in *Buford* stated

> "We know of no general rule upon the subject of awarding punitive damages, except that the damages must not be so excessive as to indicate that the jury was influenced by passion or prejudice, and must have some reasonable relation to the injury and cause of it, and must not be disproportionate to the one or the other." 131 S.W. at 503, quoted 95 A. at 806.

It is interesting to note that Kentucky courts in interpreting *Buford* have held that while punitive damages must bear some relationship to the injury and the cause thereof, an award of punitive dam-ages need not bear a proportional relationship to the award of actual damages. See Flame Coal Co. v. United Mine Workers, 303 F.2d 39, 97 A.L.R.2d 1136 (C.A.6, 1962), cert. den. 371 U.S. 891, 83 S.Ct. 186, 9 L.Ed.2d 125 (1962) and the Kentucky state court cases there cited.

The rule now followed in Kentucky would seem to be similar to the Delaware rule existing prior to *Reynolds*, that when a jury awards punitive damages they "should bear some proper relation to the main fact, and not be merely arbitrary." Tatnall v. Courtney, 6 Houst. 434, 438 (Del.Super.1881). As was stated in Guthridge v. Pen-Mod, Inc., 239 A.2d 709, 715 (Del.Super.1967), "such damages, if awarded, should be reasonably related to all of the surrounding circumstances, * * *"

■ Thus, this Court concludes that the Delaware proportionality rule adopted in *Reynolds* means that viewing the circumstances and facts of the case, the degree of maliciousness, wantonness, or grossness shown by a defendant's conduct, and the extent of the injuries caused, a judgment for punitive damages should not be so excessive as to indicate that the jury acted out of passion or prejudice rather than out of calmly reasoned deliberation. Only if the amount of punitive damages, when compared to the amount of compensatory damages awarded, in light of the other factors mentioned, is so grossly excessive as to shock the judicial conscience of the Court should it be held that the jury has acted out of passion or prejudice and that the award is disproportionate.

■ Examining the awards made in the present case in light of these standards, an award of $20,000.00 punitive damages to Sharyn Sheats for her injuries (an amount equal to one-third of the amount of the compensatory damage award) does not appear disproportionate to this Court. Nor is the award of $12,-500.00 punitive damages to P. Lloyd Sheats on his claim for loss of consortium and medical expenses for the treat-

ment of his wife [9] so disproportionate to the $7,500.00 compensatory damage award as to require the granting of a new trial. Plaintiffs' motion for a new trial on the ground of the disproportionality of the punitive damage awards will be denied.

### Punitive Damages On Loss Of Consortium Claim

Finally, the defendants contend that the Court erred in failing to strike the punitive damage claim of P. Lloyd Sheats in his action for loss of consortium and medical expenses incurred to cure his wife's injuries. They argue that punitive damages are not recoverable under Delaware law in a husband's action for loss of consortium. Three cases [10] from other jurisdictions are cited in support of this contention.

The Delaware Supreme Court has apparently never had occasion to consider this question. However, this being a diversity suit, it is incumbent upon this Court to make its own determination, from all available data, of what the Delaware Supreme Court would probably rule in a similar situation. Langfelder v. Universal Laboratories, Inc., 163 F.2d 804 (C.A.3, 1947); Costello v. Schmidlin, 404 F.2d 87 (C.A.3, 1968).

It has long been the settled law and established policy of Delaware that punitive damages may be awarded in addition to compensatory damages by way of punishment when an intentional or negligent act, which causes personal or property damages, was either maliciously or wantonly or recklessly done in disregard of the rights of others. The Delaware courts make no distinction, as some courts do, between direct and indirect injuries. See McLane v. Sharpe, 2 Har. 481 (Del.Super.1838) (property damage to carriage due to negligent operation of stage-coach); Smyrna, L. & P. Steam-boat Co. v. Whilldin, 4 Har. 228 (Del.Super.1845) (property damage to steamboat due to negligent operation of vessel); Jefferson v. Adams, 4 Har. 321 (Del.Super.1845) (personal injury and property damage arising out of tavern brawl); Hysore v. Quigley, 9 Houst. 348, 32 A. 960 (Del.Super.1892) (property damage caused by landlord negligently placing wet hair in upper story of building which dripped down on lower tenant); Farrow v. Hoffecker, 7 Pennewill 223, 79 A. 920 (Del.Super.1906) (personal injury due to negligent firing of gun); Jordon v. Delaware & A. Telegraph & Telephone Co., 1 Boyce 107, 75 A. 1014 (Del.Super. 1909), aff'd 2 Boyce 67, 78 A. 401 (Del. Supr.1910) (property damage due to negligent cutting of trees); Stein v. Diamond State Tel. Co., 4 W.W.Harr. 185, 146 A. 737 (Del.Super.1929) (property damages for loss of business caused by negligently listing telephone number); Wyatt v. Pennsylvania R. Co., 154 F. Supp. 143 (D.Del.1957) (personal injury and property damage due to negligent operation of train); Reynolds v. Willis, 209 A.2d 760, 763 (Del.Supr.1965) (personal injury, causing death, due to negligent operation of automobile); Aastad v. Riegel, 262 A.2d 652 (Del.Super. 1970) (personal injury due to negligent operation of pickup truck). Wanton conduct occurs when a person, with no intent to cause harm, performs or omits an act which is so grossly unreasonable, shocking or dangerous to life or property that he either knows or should know that there is imminent likelihood of harm. McHugh v. Brown, 11 Terry 154, 125 A.2d 583 (Del.Supr.1956); Law v. Gallegher, 9 W.W.Harr. 189, 197 A. 479 (Del.Supr.1938).

Contrary to the law of some jurisdictions, in Delaware a husband's cause of action for loss of consortium is completely separate from and independent of his wife's cause of action for

---

9. The parties agreed that Lloyd Sheats expended $2415.66 for medical treatment to effect a cure for his wife's injuries.

10. Hughey v. Ausborn, 249 S.C. 470, 154 S.E.2d 839, 25 A.L.R.3d 1406 (1967); People's Home Telephone Co. v. Cockrum, 182 Ala. 547, 62 So. 86 (1913); Golden v. R. L. Greene Paper Co., 44 R.I. 231, 116 A. 579 (1922).

personal injuries, although derivative from the wife's claim. Townsend v. Wilmington City Ry. Co., 7 Pennewill 255, 78 A. 635 (Del.Super.1907); Cf. Folk v. York-Shipley, Inc., 233 A.2d 451 (Del. Super.1967), aff'd 239 A.2d 236 (Del. Supr.1968); Stenta v. Leblang, 185 A.2d 759 (Del.Supr.1962). Thus, a suit for loss of consortium is a completely independent suit in tort for property damage. Yonner v. Adams, 3 Storey 229, 167 A.2d 717 (Del.Super.1961); Eliason v. Draper, 2 Boyce 1, 77 A. 572 (Del. Super.1910); Lupton v. Underwood, 3 Boyce 519, 85 A. 965, 973 (Del.Super. 1912). Such an action arises because his rights with respect to his wife were violated when she was negligently or intentionally injured. In Delaware punitive damages have been allowed for loss of consortium caused by the wanton alienation of a wife's affections, Lupton v. Underwood, supra, or due to criminal conversation, Prettyman v. Williamson, 1 Pennewill 224, 39 A. 731 (Del.Super. 1898).

While admittedly, the causes of action were different in the *Eliason, Lupton* and *Prettyman* cases, the basis upon which punitive damages rested in each case was the wilful and wanton invasion of independent rights of the respective plaintiffs and not the particular means by which such rights were invaded.

■ As long as plaintiff's property rights to his wife's consortium were wantonly and recklessly invaded by the defendant's acts, whether intentionally or negligently inflicted, Delaware law makes no distinction. Entitlement to punitive damages arises out of a malicious, or wanton or reckless violation of a right and not out of the means or instrumentality used to violate such right. The Court therefore concludes that under the established policy of Delaware reflected in its decisional law punitive damages may be awarded by way of punishment when an intentional or negligent act, which caused loss of consortium, was maliciously, wantonly or recklessly inflicted in disregard of a husband's rights. In view of the settled Delaware

law that a husband has a distinct claim for a tort against a third person when his wife is injured and he is thereby deprived of her society or services or put to other expense or loss as a result of the wrong and that punitive damages may be awarded by way of punishment when a right is invaded by a malicious, wanton or reckless act, the authorities from other jurisdictions are not convincing. When it comes to the allowance of punitive damages, the Delaware courts have made no distinction between negligent and intentional acts causing loss of consortium. Cf. Kohl v. Graham, 202 F.Supp. 895 (D.Colo.1962). The Court finds no error in failing to strike Lloyd Sheats' claim for punitive damages.

For the reasons herein stated, an order will be entered denying defendants' motion for a new trial on all grounds asserted.